# LOUIS WOLF v. KANSAS CITY, Appellant.

### Division One, December 18, 1922.

1. **NEGLIGENCE: Ice on Sidewalk: Injury to Pedestrian.** Where the accumulation of ice and snow upon a sidewalk is of such a character that the travel of the public thereon, in connection with weather conditions, converts its surface into ice ridges or hummocks from which pedestrians are liable to slip and fall, the liability of the city for injury to a foot-traveler who slipped and fell depends upon its failure to correct the dangerous conditions upon reasonable notice, expressed or implied.

2. ———: ———: **Result of Own Act: Failure to Correct.** Where the slippery or otherwise dangerous condition of the sidewalk resulted from the act of the city, or its act or negligence in connection with the acts of others, or the acts of others with knowledge of the city, together with its failure or refusal within a reasonable time to correct the dangerous condition, the city is liable in damages to a pedestrian who, in the exercise of ordinary care, slipped and was injured.

3. ———: ———: **Notice of Dangerous Condition.** The abnormal and dangerous condition of the sidewalk having been in part produced by the city's own act in extinguishing fire in a near-by building, notice will be implied from that fact, and its failure for fifteen days to correct the condition was negligence.

4. ———: ———: **Ridges and Holes: Affirmative Showing: Theory of Smooth Ice: Case Stated.** The time was January, the weather was very cold and there were four inches of snow on the ground, and in the early morning of the 12th there was a fire in a garage adjoining the sidewalk, which the city fire department undertook to extinguish, and water thrown upon the fire fell upon the walk and congealed with fragments from the building, including a two-by-four scantling, brick, glass and the wood structure of the windows. The garage was not completely destroyed, and its use was continued; one entrance was cleared, but the ice, snow and debris were not removed from the remainder of the sidewalk, although on two occasions the street department was requested to clear them away. On the 27th a snow began falling, and about two inches had fallen at the time plaintiff, walking along the sidewalk in front of the garage, and in the exercise of ordinary care, slipped on the rough ice, and fell breaking both bones of one leg below

the knee. Between the time of the fire and the accident, the weather had softened on certain days, but the rough and uneven surface of the sidewalk, caused by the freezing of the water as it fell and the incorporation in the ice of the debris from the burning garage, had not been removed or mitigated, and there were holes several inches deep in the accumulated mass, and no effort had been made to remove the snow covering the mass that had been falling on the day of the accident and had attained a depth of two inches at the time it occurred. *Held*, that the burden did not rest upon the pedestrian to prove affirmatively that the exact spot upon which his foot slipped was rough and corrugated, nor can the case be disposed of on the theory that he slipped upon level and smooth ice caused by the falling and freezing of rain and snow, for there are no rules excusing the city upon such theory, nor does the evidence show that the ice had formed from moisture precipitated since the fire; but the frozen mass of slush and debris having been allowed to remain for fifteen days, and its surface being concealed by the two inches of snow which had fallen on the day of the accident, the city, having notice of the dangerous obstruction and abnormal condition, was negligent.

5. ———: Notice to City of Claim: Filing Suit. A suit for damages for personal injuries sustained by a pedestrian due to an abnormal and dangerous obstruction upon a sidewalk, filed fifty-two days after the accident occurred, is a sufficient compliance with the statute requiring notice of such claim to be given to the major of the city within ninety days after the accident; and where the summons and the return thereon are not incorporated in the record, and no question is raised as to the time or manner of service, it will be assumed that the summons was promptly served and a copy of the petition delivered to the city.

6. ———: ———: ———: Time of Accident: On or About January 27th. An allegation in the petition, filed fifty-two days after the accident and promptly and properly served, that the injury was received "on or about the twenty-seventh day of January, 1918, at or about six-thirty o'clock p. m." sufficiently states the time of the accident, and sufficiently complies with the statute declaring that no action shall be maintained against the city on account of any injury growing out of a defect in any sidewalk "until notice shall first have been given in writing to the mayor of said city, within ninety days of the occurrence for which such damage is claimed, stating the place where, the time when such injury was received, and the character and circumstances of the injury," etc. The statute does not require either the minute, hour or day the injury was received to be stated, but only the time. [Following **Boyd v. Kansas City, 291 Mo. 622.**]

7. ——: ——: ——: ——: ——: **The Word Until: Common
Law Action.** The most puzzling word in said statute is the word
"until." Rigidly construed it would automatically abate any ac-
tion for damages due to defective streets or sidewalks unless the
claimant first gave notice to the mayor, stating every fact he ex-
pected to prove at his trial, even though his action were brought
the next day after the injury was received and the summons to-
gether with a copy of the petition was promptly served. But such
action arises at common law, and arises out of common right, and
if it is to be burdened with onerous conditions the Legislature
should plainly and unmistakably say so, and therefore the word
"until" will be given no such harsh meaning.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,*
Judge.

AFFIRMED.

*E. M. Harber* and *Francis M. Hayward* for appel-
lant.

(1) The court erred in refusing defendant's in-
struction in the nature of a demurrer to the evidence
asked at the conclusion of plaintiff's testimony, and
asked again at the conclusion of all the evidence in the
case. (a) Because it was impossible to say whether
plaintiff fell on the smooth or rough ice. Hatch v. El-
mira, 142 App. Div. (N. Y.) 174, 126 N. Y. Supp. 863;
Reno v. St. Joseph, 169 Mo. 342; Rogers v. Packing Co.,
180 Mo. App. 227; Goransson v. Ritter Conley Mfg. Co.,
186 Mo. 300; Modlagl v. Iron & Foundry Co., 248 Mo.
287; Tobin v. Waterloo, 131 Iowa, 75. (b) Because no
statutory notice was served on the Mayor of Kansas
City within ninety days after the time of the alleged
accident. Reid v. Kansas City, 195 Mo. App. 457;
Hackenyos v. St. Louis, 203 S. W. 986; Reese v. St. Louis,
216 S. W. 315. (2) The court erred in overruling de-
fendant's motion in arrest of judgment. Reese v. St.
Louis, 216 S. W. 315.

296 Mo.—7

*Maurice Weinberger, Darius A. Brown* and *John G. Park* for respondent.

(1) Defendant's demurrer to the evidence was properly overruled. (a) There was ample evidence of the rough, uneven and ridgey condition of the ice and snow to warrant submission to the jury.. Reno v. St. Joseph, 169 Mo. 642. A demurrer to the evidence should not be sustained if there is sufficient evidence to take the case to the jury. Reno v. St. Joseph, 169 Mo. 657. (b) The city's negligence was responsible for plaintiff's injury even though he fell on smooth ice. Reedy v. Brewing Assn. and City of St. Louis, 161 Mo. 523; Livingston v. St. Joseph, 174 Mo. App. 638. (2) The petition, filed within ninety days, was sufficient and substantial compliance with the statute. Hackenyos v. St. Louis, 203 S. W. 986; Murphy v. Seneca Falls, 57 App. Div. 438, 67 N. Y. Supp. 1013; Connor v. Salt Lake City, 28 Utah 428; Blair v. Riddle, 3 Ala. App. 292; Reno v. St. Joseph, 169 Mo. 642; Sullivan v. City of Syracuse, 29 N. Y. Supp. 105; Murphy v. City of St. Paul, 130 Minn. 410; City of Lincoln v. O'Brien, 56 Neb. 761; Purdy v. New York, 110 N. Y. Supp. 822, 126 App. Div. 320; Comstock v. Schuylerville, 124 N. Y. Supp. 92, 139 App. Div. 378; Brenner v. Chicago, 182 Ill. App. 348. (3) The date of the injury was sufficiently alleged. Boyd v. Kansas City, 291 Mo. 622; Morrill v. Kansas City, 179 S. W. 759; 21 Ency. Pl. & Pr. 814; Burnham, Hanna, Munger & Co. v. Jacobs, 66 Mo. App. 628; Mesker v. Cutler, 51 Mo. App. 341; Lesinsky v. Great Western Dispatch, 14 Mo. App. 598; State to use of Harl v. Martin, 8 Mo. 102; Martin v. Miller, 3 Mo. 136; Block v. O'Hara, 1 Mo. 145; 8 C. J. 893, 905; 22 Cyc. 1575. On the allegation of "on or about" see Mitchell v. Penfield, 8 Kan. 186; National Wall Paper Co. v. Insurance Corporation, 70 N. Y. Supp. 124, 60 App. Div. 222; State v. Harp, 31 Kan. 496; Kerr v. Blair, 47 Tex. Civ. App. 406; Blair v. Riddle, 3 Ala. App. 292. (4) Any error in naming

the day may be cured by amendment here. R. S. 1909, sec. 2120; Witte Iron Works v. Holmes, 62 Mo. App. 377.; Mueller v. Kaessman, 84 Mo. 318; Crispin v. Hannover, 86 Mo. 160; Weil v. Simmons, 66 Mo. 617; Cruchen v. Brown, 57 Mo. 38; Hemelrich v. Carlos, 24 Mo. App. 264; Muldrow v. Bates, 5 Mo. 214; Habel v. Railway, 140 Mo. 159, 165; Chandler v. Railroad, 251 Mo. 592, 603.

BROWN, C.—This cause was instituted in the Circuit Court for Jackson County on March 20, 1918, to recover damages on account of a broken leg sustained by a fall on Fifteenth Street in said city. That portion of the petition important to be considered in this appeal is as follows: ·

"That on or about the twenty-seventh day of January, 1918, at or about six-thirty o'clock p. m., the plaintiff was walking in a westerly direction upon the south sidewalk of said street, and in front of and near the premises located at Number 1113 East Fifteenth Street, in Kansas City, Missouri; that at the aforementioned time, said sidewalk at the aforementioned place was not in a reasonably safe condition for pedestrians to walk upon; that by reason thereof plaintiff slipped and fell while walking upon said sidewalk at the aforementioned time and place; that said sidewalk at the aforementioned time and place was not in a reasonably safe condition because there was upon said sidewalk at the aforementioned time and place snow and ice in a rough, rigid, and corrugated mass, and also strips of lumber and pieces of glass; that defendant knew, or by the exercise of ordinary care and diligence could have known, of the aforementioned unsafe condition of said sidewalk and could have removed said snow, ice, lumber and glass in a reasonable. time before the plaintiff slipped and fell as aforementioned.

"As a natural and proximate result of said slipping and falling, plaintiff has suffered an oblique fracture of the left tibia at the juncture of the middle and lower

third and a fracture of the left fibula through the upper third. Said injuries are in their nature serious, permanent and progressive. As a result of said injuries plaintiff has suffered, still suffers, and will continue to suffer great physical pain and mental anguish; his nerves and nervous system were shocked and injured; he has been confined to a hospital for many weeks, is now confined to his bed and will be confined to his bed for many weeks. As a result of said injuries he has lost earnings from his work and will continue to lose earnings from his work in the future; he has incurred obligations for hospital, medical, and surgical attention and is reasonably certain to incur such obligations in the future."

He laid his damages at $6000, for which he asked judgment.

The answer is a general denial and the plea of contributory negligence in the failure of the plaintiff to use his eyes and other senses.

The evidence introduced at the trial shows that in the early morning of January 12, 1918, there was a fire in the International Garage on the south side of Fifteenth Street which did considerably damage to the building and was finally extinguished without destroying it. The weather was very cold, the thermometer showing sixteen degrees below zero, and water thrown upon the fire fell upon the walk and congealed with fragments from the building, including two-by-four scantling, brick, glass and fragments from the wood structure of the windows. The ice was unevenly distributed and rigid, having holes or depressions several inches deep. The garage not having been completely destroyed, its use was continued. One of the entrances was cleared, but the remainder of the ice, snow and debris was allowed to remain, although the evidence shows that on two occasions the street department had been requested to clear it away. At the time of the fire and for sometime afterward there was considerable snow on the ground. On January 27th, the day of the accident, a snow fall began, continuing until

midnight.  About two inches had fallen and it was still snowing at about six-thirty o'clock when the plaintiff, walking along the sidewalk past the International Garage, slipped on the rough ice and fell, breaking both bones of his leg below the knee.  The fracture was very serious, causing such a displacement that the ends of the bones slipped past each other, and to hold them in place an incision was made in the leg and metal splints were screwed to the bones.  He was confined in the hospital and at his home for several months, and suffered greatly.  The facts proved will be further noticed as necessary.

The defendant, at the close of plaintiff's evidence and again after all the evidence was in, asked a peremptory instruction for a verdict in its favor, which was refused by the court, which, at the request of plaintiff, instructed the jury as follows:

"The court instructs the jury that it was the duty of defendant Kansas City to exercise reasonable care to keep its sidewalks in a reasonably safe condition for travel.

"You are, therefore instructed that if you find and believe from the evidence that on the 27th day of January, 1918, Fifteenth Street was a public thoroughfare of Kansas City, Missouri; that the sidewalk in front of and near the premises located at Number 1113 East Fifteenth Street on said 27th day of January, 1918, was not in a reasonably safe condition because there had accumulated upon said sidewalk at said place snow and ice in a rough, ridgy and corrugated mass so as to become an obstruction, if so; that defendant, Kansas City, knew, or by the exercise of ordinary care could have known of, such unsafe condition, if any, in a reasonably sufficient time to have removed said snow and ice by the exercise of ordinary care in a reasonable time before plaintiff was injured, and failed to do so; that plaintiff was injured as the direct result of said condition of snow and ice on said sidewalk; and that plaintiff at the time was exercising ordinary care for his own safety, then your verdict will be for plaintiff and against defendant."

There was a verdict and judgment for $2250, from which this appeal was prosecuted to the Kansas City Court of Appeals, by which it was certified to this court.

I.  The defendant insists that it was error to refuse the peremptory instruction asked by it because the evidence failed to show that the condition of the sidewalk which caused the injury to plaintiff was such that it imposed upon the defendant the duty of correcting or removing it. The theory is, as we understand it, that the burden rested upon plaintiff to prove affirmatively that the exact spot upon which his foot slipped when he fell was rough and corrugated and not merely slippery with ice. It contends that no action lies in favor of one who slips upon a level piece of ice in the street, although the condition may have been directly created by the city or is part of a wrongful and dangerous situation caused or permitted by it, and which is the proximate cause of the injury. This refinement of reasoning suggests a somewhat critical examination of the testimony upon which it rests. So far as the evidence shows the cause of the accident was set in motion on the morning of the twelfth day of January, 1918, fifteen days before the accident in question occurred.

According to the defendant's testimony January 10, 1918, was a cold day. The thermometer during the day registered sixteen degrees below zero, with three inches of snow on the ground. The next day the thermometer reached the same degree of depression, and on the day of the fire it also went down to the same mark with four inches of snow on the ground. It was under these circumstances that the fire took place. Not often in Missouri do we encounter such cold, and it is easy to imagine the effect upon the snow of the water used to extinguish a fire. Windows were destroyed in the second story of the garage building, so that they fell to the sidewalk, and the debris of broken frames and broken glass necessarily incorporated itself with the snow, and among this

*Smooth Ice: Abnormal Obstruction.*

mass was observed at least one two-by-four scantling. The street department was notified of this condition, but took no action. In the meantime the weather softened until the snow went off, and on the 24th day of January the temperature rose to fifty-one degrees, with a minimum just below the freezing point, and then the mass began to get cooler. The temperature on the 27th, the day of the accident, had fallen to nine degrees and it was snowing, so that in the evening when the accident occurred there were two inches of snow covering this mass, which had not yet been removed, nor in any way mitigated. Such was the general condition, so far as is shown by the evidence, when the plaintiff started to walk down Fifteenth Street.

When he came to the front of the garage where, in places, the ice was rough, having depressions, or, as a witness described it, holes in it several inches deep, he slipped and fell. The point made by the defendant's counsel is that there is nothing in the evidence to show that the ice at the point where his foot slipped was not perfectly smooth and natural, as ice would be deposited from the moisture fallen in a gentle rain. That for this reason there was no evidence that any deposit of ice was there which it was in duty bound to remove. To be sure the weather record which it produced primarily for the enlightenment of the jury and incidently for our own enlightenment, shows that day after day immediately preceding, there had been no "precipitation," and that the highest temperature of that twenty-four hours had been eleven degrees—pretty sharp freezing weather—with a gentle snow storm. This indicates that the ice where he slipped must have been the same deposit which resulted from the fire fifteen days before, with its mixture of water, snow and general debris from the burning building, the nature of which, as condensed in the foregoing statement, was fully described by numerous witnesses, the truth of whose testimony is left unquestioned by the evidence. There is no statement

nor hint in the evidence that ice had been formed from the freezing of any moisture that had been precipitated since the fire, and at the time of the accident, and dur-that entire day, the thermometer indicated a temperature of at least twenty-one degrees below freezing point.

Under these circumstances the entire surface of this mass of slush and debris was frozen hard, and concealed to a greater or less extent by the two inches of snow which had already fallen and which was still falling.

It was under these circumstances that the plaintiff approached this frozen and irregular mass. That he was in the exercise of due care was found by the jury under instructions which are not questioned. His foot slipped and he fell. Instead of receiving a harmless fall his leg was wrenched with such force as to cause a compound fracture of both bones below the knee, and the bones were displaced in such a manner that their ends slipped past each other, so as to require extension to be applied for nine days before they could be set. It is difficult to imagine how this result could have been produced by a mere fall on slippery ice, unless there was something to interfere with the free movement of the leg while the moving weight of the body was being applied with such force as to produce it. The effect itself was evidence that the free movement of his body had been met by an obstruction, and the evidence is ample that such obstructions existed in the defective condition of the street. No attempt is made to excuse this condition. It had existed for fifteen days; that the street department had been called upon to correct it, is not denied, and the only excuse for neglecting it seems to be that there was plenty of room for the plaintiff to slip and fall without the assistance of the rough ice and debris which he might fall upon or against. The defendant seems to rely upon the proposition that a city is in no event liable for injuries which may be caused by an accumulation of smooth ice upon its sidewalks. We know of no such rule. There is a rule which may be

roughly stated to the effect that the city is not liable for a slippery condition of its sidewalks produced by natural causes such as combined rain and freezing, and general in its extent. The rule of liability in all cases of this character has been stated by this court in Reedy v. Brewing Assn. and City of St. Louis, 161 Mo. 1. c. 539, as follows: "We hold that where the sidewalk is in fact rendered dangerous because of slippery ice formed from accidental or incidental discharge of water, such not being the prevalent condition of sidewalks at the time, it is the duty of the city to cause the danger to be removed within a reasonable time after it has notice or by the exercise of ordinary care would have discovered the condition." In that case the plaintiff sued the Brewing Association and the city of St. Louis for damages sustained by plaintiff in slipping and falling upon ice in one of the public streets in the city, alleging that joint liability consisted in the neglect of defendant city to remove the ice from the sidewalk within a reasonable time after its existence was known or would have been known by the exercise of reasonable care. The liability of the Brewing Association was based upon its permitting water to escape from its gutter and run upon the sidewalk in freezing weather. In Reno v. City of St. Joseph, 169 Mo. 1. c. 656, we stated the rule as follows: "It may be conceded that a city is not liable for accidents occasioned by mere slipperiness caused by ice upon its sidewalk, but if the ice is so rough and uneven, or so rounded up, or at such an incline as to make it an obstruction, and to cause it to be unsafe for travel with the exercise of ordinary care, then it is liable for injuries sustained by a pedestrian under such circumstances. . . . Or when snow and ice are permitted to accumulate upon a sidewalk of a city, and are permitted to remain there until by thawing and freezing they become an obstruction and the sidewalk unsafe for travel, and the city has knowledge thereof for a sufficient length of time before an accident and injury oc-

curs, to one traveling thereon in the exercise of ordinary care, to remove the obstruction and fails to do so, it will be held to respond in damages for the injury.''

In these cases the liability of the city in damages for injuries resulting to pedestrians by reason of the deposit or accumulation of snow and ice upon its sidewalks to such an extent and in such manner as to make them dangerous to pedestrians, and its failure to remove them within a reasonable time after notice, is fully discussed, and the conclusion is clearly stated, (1) that when such deposits result from natural causes, like the precipitation of moisture in the form of sleet or rain, of which all are alike bound to take notice, and which operate similarly under similar circumstances over the region covered by such precipitation and freezing, there is ordinarily no liability; (2) that where the deposit is of such a character that the travel of the public along the walk in connection with the condition of the weather converts the surface into ice ridges or hummocks from which pedestrians are liable to slip and fall to their injury, the liability of the city depends upon its failure to correct the dangerous conditions upon reasonable notice expressed or implied; (3) that where the slippery or otherwise dangerous condition results from the act of the city, or its act or negligence in connection with acts of others, or the acts of others with the knowledge of the city, together with its failure or refusal within a reasonable time to correct the dangerous condition, it is liable.

In this case there is no question that the condition of this sidewalk was abnormal and dangerous. The facts disclosed also indicate that the city must, in the exercise of its functions relating to the extinguishment of fire, have had part in producing it. It had also been notified of it and requested to correct it, and failed for a reasonable time to do so. The verdict of the jury is fully sustained by the evidence unless the plaintiff has for-

**Notice of Dangerous Condition.**

Wolf v. Kansas City.

feited the right to recover the damages suffered by failing to give the notice required.

II.   The defendant relies upon the terms of the act approved March 21, 1913 (Laws 1913, p. 545, sec. 1),

Notice of Claim to City. to sustain its contention that its instruction for a verdict in its favor should have been given. The act consists of a single section which is as follows:

"No action shall be maintained against any city of this State which now has or may hereafter attain a population of one hundred thousand inhabitants, on account of any injuries growing out of any defect in the condition of any bridge, boulevard, street, sidewalk or thoroughfare in said city, until notice shall first have been given in writing to the mayor of said city, within ninety days of the occurrence for which such damage is claimed, stating the place where, the time when such injury was received, and the character and circumstances of the injury, and that the person so injured will claim damages therefor from such city."

The object of this section being evidently to supply the defendant promptly with notice of the time, place and circumstances of the injury for which the injured person intends in due time to bring an action, so that it may have an opportunity to investigate the matters stated before the lapse of time has obliterated or changed the physical surroundings and obscured the memory of witnesses, it has been held by this court that the actual institution of the contemplated suit renders such notice unnecessary.   [Costello v. Kansas City, 280 Mo. 576; Hunt v. St. Louis, 278 Mo. 213; Morrill v. Kansas City, 179 S. W. 759.]   In this case the petition was filed on March 20, 1918, fifty-two days after the occurrence of the accident.   The appellant not having incorporated the summons and return thereon in its abstract of the record, nor otherwise raised any question having reference to the time of service, it will be presumed that the summons was promptly served and a copy of the petition

delivered to the defendant as required by law. On the authority of the cases cited we hold that this petition, if sufficient in form for that purpose, rendered further notice unnecessary.

III. The defendant's chief contention is that the petition, to supersede the notice required by the act, must state the time when the injury was received and that this petition does not fill this require-ment for the reason that in stating the time it uses the words "on or about the twenty-seventh day of January, 1918, at or about six-thirty o'clock p. m." The construction of the statute in that respect is thus called in question. It will be observed that the statute does not require either the day or hour or the minute that the injury was received to be stated, but only the time, and the defendant contends that what-ever statement is made must leave no room for the use of the word "about."

*On or About January 27th.*

While a city, in the exercise of its governmental powers, is, with respect to acts done under its general police power, an instrument of the State, and its officers and agents, with respect to the performance of the du-ties relating thereto, are governmental agents of the State and their acts in that respect cannot impose any liability upon the city, this rule does not apply to in-juries resulting from their failure to maintain its streets in a reasonably safe condition. Landowners may, for profit, lay out their lands in streets, alleys and lots, and build and organize a city under the laws of the State, and the city will be liable for damages resulting from its failure to keep the streets and alleys by which pur-chasers have been secured, in a safe condition. This has, from the earliest times, been considered so just and reasonable, that the common law has constituted a neg-lect of that duty an actionable wrong, for the redress of which a common-law action will lie. It is plain that leg-islative enactments that impose a burden upon that rem-edy which does not rest upon suits for redress of other

wrongs are in derogation of the common law and common right and should be construed accordingly. We express the same idea when we say that if such suitors ought not to have redress the Legislature should say so, and that if such redress should be burdened with onerous conditions which apply to no other class of suitors it should be plainly and unmistakably stated.

Coming to the construction of the Act of 1913, we are particularly puzzled by the use of the word "until." Were the word "unless" it would be perfectly intelligible, meaning that the defendant should be informed of the facts and intention of the injured party to sue within ninety days from the date of the injury which would be, under the circumstances, a reasonable requirement. The word "until" might be so construed that if suit were brought the day after the injury without such notice it could not be maintained for an instant, but would abate automatically. It would then express the intention of the Legislature to forbid the bringing of a suit against the city until he informed it of all the facts he would be permitted to prove at the trial and estop himself forever from correcting any mistake in his present information. Upon this construction the statute is not only equivalent to the enactment of a statute of limitations of ninety days, but prescribes a rule of pleading which abolishes the right of amendment in the cases to which it applies. To ascribe this intention to the Legislature is unthinkable.

In this case, as we have already stated, the petition states the time of the accident to be on or about the twenty-seventh day of January, 1918, at or about six-thirty o'clock p. m. The only variance between the proof and the time so stated was that the proof showed that it took place on that day from six-thirty to seven o'clock p. m. That this notice was sufficient has been held by this court in Boyd v. Kansas City, 291 Mo. 622, 237 S. W. 1001, in which all our former decisions are reviewed, making it unnecessary that we should incum-

ber this record with further reference to them otherwise than to say that the case of Reese v. City of St. Louis, 280 Mo. 123, is distinctly overruled. We therefore, upon the authority of the Boyd Case and the cases there cited in its support, hold that the time at which this plaintiff received his injury is well stated in his petition.

The judgment of the circuit court is accordingly affirmed. *Small* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion of BROWN, C., is hereby adopted as the opinion of the court. All of the judges concur.