William J. PAUL (Plaintiff), Appellant,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a corporation, (Defendant) Respondent.

No. 29499.

St. Louis Court of Appeals.

Missouri.

Dec. 4, 1956.

Michael Jos. Hart, St. Louis, for appellant.

Warner Fuller, John P. Montrey, St Louis, for respondent.

ANDERSON, Presiding Judge.

This is an action by William J. Paul, as plaintiff, against the Terminal Railroad Association of St. Louis to recover damages for personal injuries alleged to have been

sustained by plaintiff on December 14, 1951, as a result of a fall on steps leading from the deck of Eads Bridge, owned and maintained by defendant. The action was begun in the Magistrate Court of the City of St. Louis. A trial in that court resulted in a verdict and judgment for defendant. Plaintiff then appealed to the Circuit Court of the City of St. Louis where a trial was had resulting in a verdict and judgment for defendant. From this judgment, plaintiff appealed.

The negligence charged in the petition was that defendant failed to "remove an accumulation of ice and snow from a series of steps leading from the Eads Bridge in East St. Louis, Illinois, * * * when defendant knew or should have known that the steps were in a dangerous condition due to the accumulation of ice and snow * * *."

Plaintiff resided at 3724-a Iowa Street in the City of St. Louis, and was employed by the Nickel Plate Railroad Company. He worked in East St. Louis. On December 14, 1951, plaintiff left his home about 7:00 a. m. At that time the weather conditions were bad. The streets and sidewalks were covered with ice and were slippery. Plaintiff testified it was not raining or snowing at that time. Later, he stated he could not remember whether or not there was any precipitation at the time. He made his way from his home to Broadway, where he was picked up by a passing motorist and taken to the bus terminal of the East St. Louis City Lines. This terminal was located at Washington Avenue and Broadway, near the western end of Eads Bridge. He then boarded a bus for East St. Louis. Plaintiff testified he thought it was raining a little when he got on the bus, but could not be definite about it. This bus operated over Eads Bridge. The bridge was owned and maintained by the defendant. The bus crossed the bridge and, when it reached the point where the eastern approach begins its descent from the deck of the bridge, plaintiff alighted. This was a regular stop

for passengers and was called the "Tower". The approach to the main deck of the bridge has two lanes, separated by railroad tracks. These tracks run underneath the main deck of the bridge. On the north side of the bridge, about a half block east of where the two lanes join the main deck, there is a wooden stairway, about five feet in width, leading from the approach to Broadway in East St. Louis. There are about sixty-five steps in this stairway, with railings on each side. There are three landings which divide the stairway into four sections, each section having approximately sixteen steps. The stairway was for the convenience of persons using the bridge. It was plaintiff's custom to get off the bus at the Tower, cross to the north side of the bridge, and descend the stairway to Broadway. This was the route he pursued the morning he was injured.

It was admitted by defendant at the trial that plaintiff was on said date an invitee upon the bridge and stairway. The bridge at that time was all covered with ice and snow, and appeared slippery. Plaintiff reached the top of the stairway at about 8:00 o'clock, or a little after. When plaintiff reached the stairway he looked down the steps and observed that the steps were covered with ice and snow. It looked hazardous. He started down the stairway, holding onto the railing. When he stepped on the top step, "it was pretty slick, but I managed to keep going, and I got down to the last flight. * * * Before I put my foot on the top of the second step, why, that was all, I went down." Plaintiff further testified that his foot slipped on the ice and snow and that he fell down sixteen or eighteen steps to the bottom of the stairway.

Mrs. Gastorf, a fellow worker of plaintiff, arrived at the stairway on her way to work at about 7:30 a. m. She testified that it had sleeted that morning and there was a lot of ice on the streets. It had been sleeting the whole night through. Mrs. Gastorf stated that she definitely did remember it had stopped sleeting when she went to

work. She left her home that morning at 7:00 o'clock or a quarter to seven. She stated there was ice on the deck of the bridge, on the walks, and on the stairway. She stated: "I walked down. I started down and I got to the first landing, and it seemed like the farther down I got, the worse they got, and I had to hold on with both arms, and I stayed there, and I didn't know whether to go back up or continue down the steps, and I knew if I went back up and walked down the incline—the incline was all ice, so I mostly took a chance to go down the steps, so I went down. * * * I had my lunch in may hand, but I threw it down, because I couldn't hold it. * * * I was holding on the railing with both hands."

Mrs. Gastorf arrived at her place of employment at about five minutes to eight. Upon her arrival there she called defendant's general office and advised them of the slippery condition of the stairway.

According to the records of the United States Weather Bureau, which were introduced in evidence by defendant, measurable precipitation fell every hour on the day in question, commencing at 1:00 a. m., up until and including 9:00 a. m. Thereafter, a "trace" of precipitation fell every hour up to and including noon. The temperature was 31 degrees or lower from 1:00 a. m. until 8:00 a. m.

The following statement of the meteorologist in charge of the St. Louis Weather Bureau was introduced in evidence by defendant:

"As the custodian of the records of the United States Weather Bureau filed at St. Louis, Missouri, I hereby certify that it appears on such records that snow began falling at St. Louis, Missouri, on December 13, 1951, at 10:15 p. m., and changed to freezing rain and sleet at 10:30 p. m., and continued until 4:45 a. m., December 14; that freezing rain continued from 4:45 a. m. to 11:00 a. m., when freezing drizzle began and continued until 12:15 p. m. The record further shows that snow began at two p. m., December 14, 1951, in St. Louis, Missouri, and continued until 11:30 p. m.; that streets and sidewalks became icy in places at eleven p. m. December 13, 1951; and that pavements were icy all day December 14, 1951; that there was one-tenth of an inch of snow, freezing rain, and sleet on the ground at 11:59 p. m. December 13, 1951. The total snowfall was five-tenths of an inch on December 14, 1951. The average depth of snow, sleet and ice to the nearest inch was one inch at 12:15 p. m., December 14, 1951; and that precipitation melted, melted snow, melted ice, and melted sleet on December 14, 1951, totaled .75 of an inch. All the foregoing is for St. Louis, Missouri, and the time shown is Central Standard. Signed H. F. Wahlgren, Meteorologist in charge."

Plaintiff submitted his case to the jury on the theory that defendant was negligent in failing to exercise ordinary care to make the steps reasonably safe, after defendant, by the exercise of ordinary care, could or should have known of the accumulation of ice or snow on said steps.

The court gave an instruction for defendant submitting the issue of contributory negligence on the part of plaintiff in proceeding down said stairway when he knew or by the exercise of ordinary care should have known that the stairway was covered with ice and was slippery.

Appellant assigns as error the giving of instructions two and three. By Instruction No. 2 the court submitted the issue of contributory negligence. It is urged this was error for the reason there was no plea of contributory negligence. Instruction No. 3 was on the burden of proof. The complaint with reference to said instruction is that it is erroneous because it does not inform the jury what is meant by "the greater weight of the evidence."

Respondent contends that its motion to dismiss should have been sustained for the reason that no case for the jury was made on the issue of defendant's negligence, and for the further reason that plaintiff was guilty of contributory negligence as a matter of law. If either of these contentions be upheld it is unnecessary, of course, to deal with the points raised by appellant. Koenig v. Heitz, Mo.App., 282 S.W. 107.

The defendant is not an insurer of the safety of its premises, but where it invites the public to use said premises it must exercise reasonable care to keep its bridge and the approaches thereto in a reasonably safe condition. Williams v. Kansas City Terminal R. Co., 288 Mo. 11, 231 S.W. 954; Sirounian v. Terminal R. Ass'n of St. Louis, 236 Mo.App. 938, 160 S.W.2d 451. Its duty is analogous to that of a municipality wtih respect to sidewalks. There is no duty to remove ice or snow where such condition is general throughout the city. Walsh v. City of St. Louis, 346 Mo. 571, 142 S.W.2d 465; Luettecke v. City of St. Louis, 346 Mo. 168, 140 S.W.2d 45; St. Louis Bridge Co. v. Miller, 138 Ill. 465, 28 N.E. 1091. In such cases there is no liability for injuries resulting from the natural accumulation of ice and snow, but a duty to see that risks of bodily harm incident to a slippery condition of its walks and stairway produced by natural causes is not increased beyond that naturally created by the elements. Thus, where there is a deposit of ice and snow of such a character that the travel of the public converts the surface into icy ridges or hummocks likely to cause pedestrians to slip and fall, there is a duty to correct the dangerous situation upon reasonable notice, express or constructive. Wolf v. Kansas City, 296 Mo. 95, 246 S.W. 236; Walsh v. City of St. Louis, 346 Mo. 571, 142 S.W.2d 465; Lowden v. Denton, 8 Cir., 110 F.2d 274.

In the case at bar we are unable to see any evidence of negligence on the part of defendant. According to plaintiff's testimony, it had been sleeting through-out the previous night, and the streets and sidewalks throughout the city were covered with ice. Like testimony was given by Mrs. Gastorf. There was no evidence that the slippery condition of the stairway was other than that common to the community. There was, therefore, no breach of duty shown. The obligation resting on defendant to remove accumulations of ice and snow from its premises was a qualified one, and became imperative only when dangerous formations and obstructions of a special nature not common to the neighborhood had been allowed to remain after notice of their existence had been received. Not only was there an absence of proof of such a condition, but a lack of proof that defendant had actual or constructive notice of the condition in time to have removed the ice prior to plaintiff's fall. The only evidence of actual notice was given by Mrs. Gastorf who stated that immediately upon arriving at her place of employment she notified some one in defendant's general office of the slippery condition of the stairway. She got to work at about five minutes before 8 o'clock. Plaintiff reached the top of the stairway at about 8 o'clock. Obviously the time between the receipt of this notice and plaintiff's fall was too short to enable defendant to take effective means to remedy the situation. Nor do we think that a case of constructive notice was made. Plaintiff was uncertain whether there was any precipitation when he left home that morning, but thought it was raining when he boarded the bus at the west end of the bridge. This was but a few minutes before he fell. If plaintiff's thoughts were correct, the storm which caused the condition had not abated when plaintiff started across the bridge; and unless it was the duty of the defendant to take notice of the icy condition as it formed, and to keep the steps clear of ice during the storm, it was not guilty of negligence. We do not understand the law as having placed so heavy a burden on it. Where the precipitation is continuous, the duty to take notice of icy formations and to remove the ice as it forms cannot be imposed. In such cases

the dangers arising therefrom are viewed as the normal hazards of life, for which the owner of the premises cannot be held liable. Blumberg v. Baird, 319 Ill.App. 642, 49 N.E.2d 745; Goodman v. Corn Exchange Nat. Bank & Trust Co., 331 Pa. 587, 200 A. 642.

Taken with the case was respondent's motion to dismiss the appeal. This motion is overruled.

For the reasons stated, it must be concluded that no case was made upon the state of facts present. The judgment is accordingly affirmed.

MATTHES, J., and ELMO B. HUNTER, Special Judge, concur.