Jacqueline GUDORP, Plaintiff-Respondent,

v.

The CITY OF ST. LOUIS, a Municipal Corporation, Defendant-Appellant.

No. 31241.

St. Louis Court of Appeals.

Missouri.

Nov. 19, 1963.
Rehearing Denied Dec. 9, 1963.

484

Thomas J. Neenan, City Counselor, John J. Horgan, Associate City Counselor, St. Louis, for appellant.

Stewart D. Flanagan, Harold O. Piening, St. Louis, for respondent.

ROBERT G. BRADY, Commissioner.

The respondent instituted her action against the City of St. Louis to recover damages for injuries she sustained as a result of a fall allegedly caused by the City's negligence in failing to remove snow and ice from a portion of a sidewalk in the City. The jury's verdict was for respondent in the amount of $5,000.00 and the City appeals. The plaintiff will hereafter be referred to by her designation at trial and the appellant will be referred to as the City.

The City raises only one point upon this appeal. It contends the trial court erred in overruling its motion for a directed verdict offered at the close of all the evidence. We will state the facts in the light most favorable to the plaintiff, giving her the benefit of her own and of that portion of the City's evidence that aids her. In addition, she is to receive the benefit of all reasonable inferences to be drawn from that evidence provided those inferences do not conflict with her own testimony or with her theory of recovery. Bronson v. Kansas City, Mo.App., 323 S. W.2d 526; De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628. Our statement of the factual situation will be further limited to that bearing upon the negligence submitted in plaintiff's verdict-directing instruction. Thaller v. Skinner & Kennedy Co., Mo., 315 S.W.2d 124; Taylor v. Hitt, Mo.App., 342 S.W.2d 489. The negligence submitted in that instruction was that the City, having constructive knowledge that this sidewalk had on it rough and uneven snow and ice covered with a thin layer of fallen snow, negligently failed to remove the snow and ice although in the exercise of ordinary care it had time to do so after receiving such knowledge and prior to plaintiff's fall. It is well settled that we are not to convict the trial court of error in refusing to direct a verdict unless all reasonable men in the exercise of a fair and impartial judgment would reach the same conclusion. Bronson v. Kansas City, supra. The City contends that the evidence is insufficient to authorize submission of that issue to the jury. In view of the nature of the City's single allegation of error, the rules of appellate review governing our view of the evidence, and the determinative issue of this appeal under what are herein held to be the applicable rules of law, our statement of the factual situation will be very brief.

There was no snow or ice on the sidewalks in the City of St. Louis prior to Thanksgiving Day, November 27, 1958. It began to snow in the City of St. Louis at

approximately 11 p. m. on that day and continued to snow until about 11 a. m. on Friday, November 28th. The total fall in the City was 3.9 inches. The plaintiff fell at 4:30 on Saturday afternoon, November 29th.

Plaintiff had driven her automobile from her home in St. Louis County to the intersection of Duke and Gravois in the City of St. Louis, intending to shop in that area. Her testimony was that the streets upon which she drove were clear where automobiles had been running, but there was some snow and slush on the remaining portion of the streets. Duke was a one-way street running in a generally east/west direction and the plaintiff parked on the north side of the street with the front of her automobile facing eastwardly toward Gravois. To go to the stores fronting on Gravois, plaintiff walked eastwardly on the sidewalk along the north side of Duke. This sidewalk was clear. When she finished shopping and was ready to return to her automobile, plaintiff was south of the Duke and Gravois intersection. She walked northwardly on the west side of Gravois to the intersection and then turned westwardly on Duke, walking on the south sidewalk. Near the intersection, this sidewalk was clear but further west it was covered with ice which started at an alley and extended about 50 feet toward Gravois. At the east edge of the alley there was a 2-car garage. In front of this garage the snow and ice was rough and uneven due to people walking across it and from automobiles being operated over it. It had a thin layer of fallen snow over it. It was while she was upon this stretch of sidewalk in front of the garage that plaintiff fell. The sidewalks in the City were generally clear of snow.

The plaintiff's husband testified that on Saturday afternoon after he had been informed of his wife's fall, one of his neighbors drove him to the scene of this accident. The amount of snow on the streets had diminished but there was still some snow on the streets out of the main line of traffic

and the ground was covered. The plaintiff's witness, Schaper, testified that on this Saturday there was ice on the sidewalk where plaintiff fell and also out into the street so that the ambulance attendants had a difficult time in keeping their footing. The presence of snow and ice on Duke on Saturday was also confirmed by other witnesses.

The official records of the weather bureau were introduced into evidence and for the three-day period here involved, the following information was given thereon:

"November 27, 1958: The maximum temperature was 30 degrees and the minimum temperature 21 degrees. One inch of snow fell before midnight of the 27th and melted precipitation measured 0.10 inch.

"November 28, 1958: The maximum temperature was 28 degrees and the minimum temperature was 22 degrees. Two and nine tenths inches of snow fell from midnight of the 27th to midnight of the 28th; melted precipitation measured 0.30 inch. There was four inches of snow on the ground at 7 a. m.

"November 29, 1958: The maximum temperature was 37 degrees and the minimum temperature 15 degrees. At 7 a. m. on this date three inches of snow remained on the ground. No precipation was measured and no snow fell during the 24-hour period."

There are approximately 2,200 miles of sidewalk within the limits of the City.

The basic principles of law which govern the general subject of the liability of a municipality to one injured as a result of snow and ice on a sidewalk are too well known and have been stated too often to burden this opinion with their recital. Those interested will find this field of the law well covered in Vol. 25 Am.Jur., Highways, Sections 515–524, and in Vol. 63 C.J.S. Municipal Corporations at §§ 811–816. The Missouri cases are digested in Vol. 21A Mo. Digest, Municipal Corpora-

tions, ■ 769, et seq. Cases from this and other jurisdictions can be found annotated in 80 A.L.R. 1151, and in 39 A.L.R.2d 782. An earlier annotation can be found at 13 A.L.R. 17.

■■ In Missouri a municipality is not required to remove snow and ice from its sidewalks when such condition is general throughout the city. Walsh v. City of St. Louis, 346 Mo. 571, 142 S.W.2d 465; O'Brien v. City of St. Louis, Mo., 355 S.W. 2d 904. There is no question but that in this case the factual situation prevents the application of this rule. In her verdict-directing instruction, the plaintiff required the jury to find " * * * that said ice, if any, had existed at said place for a longer period of time than on sidewalks generally through said city * * *" and this was amply supported by the evidence. The sidewalk upon which this accident occurred was not fully covered by ice. A portion of it was clear of any covering. There is evidence that snow fell but no evidence of any general icy condition nor of sleeting or freezing rain at any time during the three-day period here involved. The sidewalk on the north side of Duke was clear of snow and ice and the same was true of the other sidewalks in the vicinity of the Duke and Gravois intersection. Another of plaintiff's witnesses testified that the sidewalks in the City were clear except for some snow in the curbing. Under the factual situation here prevailing, we cannot hold that the ice on the sidewalk where plaintiff fell was a part of a general condition prevailing throughout the City.

■■ Where the dangerous condition is not common to the general condition throughout the City, the City has the duty to exercise reasonable care to remedy such a dangerous condition. Harding v. St. Joseph, 222 Mo.App. 749, 7 S.W.2d 707, cited with approval in Walsh v. City of St. Louis, 346 Mo. 571, 142 S.W.2d 465, l. c. 466 [2, 3]. Thus this court has held that where there is a deposit of ice and snow of such a character that the travel of the public converts the surface into icy ridges or hummocks likely to cause pedestrians to slip and fall, a duty falls upon the City to correct the dangerous situation upon the receipt of reasonable notice. Paul v. Terminal R. Ass'n. of St. Louis, Mo.App., 296 S.W.2d 167, l. c. 170 [1–3] and cases there cited. Compare Coy v. Kansas City, Mo. App., 243 S.W. 418, where sleet and freezing rain had fallen and then thawed and frozen to create a general icy condition. Under those circumstances, a fall allegedly due to rough and uneven snow and ice created by frozen footprints, covered by a recent general fall of light snow, was held insufficient to create any liability against a municipality. In Walsh v. City of St. Louis, supra, the early case of Reno v. St. Joseph, 169 Mo. 642, 70 S.W. 123, was stated to be one where the fall there involved was the result of a local condition peculiar to a particular spot rather than a general condition prevailing throughout the city. In that circumstance, it is analogous to the instant case. Under such a factual situation, a municipality is entitled to sufficient actual or constructive notice of the existence of the condition as will give it a reasonable time to remedy that condition. Walsh v. City of St. Louis, supra; Paul v. Terminal R. Ass'n. of St. Louis, supra. In Reno v. St. Joseph, supra, 70 S.W. l. c. 126, the rule is stated as follows:

" * * * Or when snow and ice are permitted to accumulate upon a sidewalk of a city, and are permitted to remain there until by thawing and freezing they become an obstruction, and the sidewalk unsafe for travel, and the city has knowledge thereof for a sufficient length of time before an accident and injury occurs to one traveling thereon in the exercise of ordinary care, to remove the obstruction, and fails to do so, it will be held to respond in damages for the injury. * * *"

Compare Albritton v. Kansas City, 192 Mo. App. 574, 188 S.W. 239, l. c. 241, holding that unevenness and roughness produced by

travel through snow and slush which afterwards freezes and presents no obstructive or dangerous features uncommon to the general condition of snow and ice is not to be classed as actionable defect.

The City contends that the evidence is that this condition had existed only 7½ hours prior to plaintiff's fall. It determines this figure by arguing that there could be no melting of the snow so as to cause rough and uneven ice to be formed by the freezing of the resulting slush until sometime on Saturday, the 29th, when the temperature reached a point above freezing for the first time since snow began to fall on the 27th. Since the evidence is that the low temperature for the 24-hour period of the 29th of November was 15 degrees, the City urges that this low must have occurred during the hours between midnight and very early on the morning of the 29th. It then argues that the thaw occurred later that morning and fixes the time when the thaw began as 9 a. m. Recognizing that the uncontradicted evidence was that the area was frozen solid at the time of plaintiff's fall, the City contends the freezing must have taken place immediately after the thaw. Thus it considers the time during which the City must be held to have gained constructive notice of the condition of this sidewalk began at 9 a. m. on the 29th and ended at 4:30 p. m. on the same day. This argument cannot be sustained. There was no evidence upon which to base the assumption that the low temperature of 15 degrees was recorded sometime between 12 midnight on the 28th and 9 a. m. on the morning of the 29th. Evidence is equally lacking that the high temperature for the 29th was reached during the morning of that day and that the temperature thereafter returned to below freezing. The evidence does not sustain the City's theory as to the time this condition existed.

When the evidence is viewed in the light we are required to view it, the jury was entitled to find this condition had existed for a longer period of time than 7½ hours.

The evidence of pedestrian and vehicular tracks in the ice would allow the jury to infer that such activity over this area of the sidewalk could cause some slush to be created. The evidence that the temperature remained below freezing prior to some undetermined time on the 29th supports the finding that the footprints and tire tracks made across the slush thus created would freeze. It follows that the jury would be entitled to find the rough and uneven condition of the ice was created prior to the 29th when the temperature first rose above the freezing mark. Moreover, the testimony was undisputed that when plaintiff fell, the rough and uneven ice was covered with a thin layer of fallen snow. The uncontradicted evidence was that snow ceased to fall at 11 a. m. on the 28th. The evidence most favorable to the plaintiff fixes the time of her fall at 4:30 p. m. on the 29th. Since snow ceased to fall 29½ hours prior to plaintiff's fall and since when she fell the ice was covered with a thin layer of fallen snow, it follows that the evidence substantiates the plaintiff's theory that this condition of the sidewalk existed prior to 11 a. m. on the 28th. While there is no evidence from which the maximum time this condition had existed can be determined, the evidence does support the contention that 29½ hours was the minimum length of time it had existed. The specific question presented by this appeal is whether evidence that this condition had existed for that length of time is sufficient to support submission to the jury of the issue of the City's constructive knowledge of the existence of this condition.

■ What has been held to constitute sufficient constructive notice has been the subject of annotation. Some of the pertinent cases may be found at 13 A.L.R. 46, 80 A.L.R. 1160, and 39 A.L.R.2d 808, et seq. See also McQuillin, Vol. 19, Municipal Corporations, 3rd Ed., Sec. 54.114, pp. 429–450. However, it has long been the rule in this state that in those cases involving a sidewalk condition alleged to be dangerous and hazardous from causes other than snow and

ice, there is no fixed rule as to what length of time would furnish notice to a municipality. Each case is held to depend upon the facts and circumstances surrounding it. Young v. Webb City, 150 Mo. 333, 51 S.W. 709. We think that statement equally applicable to cases involving injuries upon sidewalks covered with snow and ice. Nevertheless, we are cognizant that a time lapse only slightly less than that involved in the instant case has been held an insufficient lapse of time. In Armstrong v. City of Monett, Mo., 228 S.W. 771, l. c. 774, the court held:

"* * * It was part of plaintiff's case to show when the freezing and thawing occurred which formed the rough ice which injured him, and that it occurred a sufficient length of time prior to the injury to enable the defendant city by the exercise of ordinary care to have discovered and removed it. *This the plaintiff's evidence failed to show, because, under the evidence offered by the plaintiff, such freezing and thawing and trampling by pedestrians may have been on the same day plaintiff was injured, in which case it could not be contended the city would be liable.* The plaintiff must show that his injury occurred under circumstances in which the city would be liable, among which is the existence of the defect complained of for a sufficient length of time before the injury to enable the city to remedy the defect." (Emphasis supplied.)

In Vonkey v. City of St. Louis, 219 Mo. 37, 117 S.W. 733, l. c. 735, 2(a), approximately one half day was held an insufficient lapse of time.

■ It is not necessary to the proper disposition of this appeal that we herein set out a list of the numerous factors that bear upon the question of what constitutes a sufficient lapse of time to authorize submission to the jury of the issue of constructive notice. It is sufficient that we note that two of those factors weigh heavily against the plaintiff in the instant case. Those factors are the lapse of 29½ hours and the undisputed fact that the City had approximately 2,200 miles of sidewalk within its limits. When the time lapse here involved is considered in the light of the total number of miles of sidewalk in the City, we believe that reasonable minds, in the exercise of a fair and impartial judgment, could not reach any conclusion other than that the lapse of 29½ hours is an insufficient lapse of time.

It follows that the trial court erred in overruling the City's motion for a directed verdict offered at the close of all the evidence. The judgment should be reversed and the cause remanded to the trial court with directions to enter its judgment in favor of the City. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is reversed and the cause remanded to the trial court with directions to enter its judgment in favor of the City.

RUDDY, P. J., WOLFE, J., and WILLIAM M. KIMBERLIN, Special Judge, concur.