Deane FINDLEY, Appellant,

v.

The CITY OF KANSAS CITY, Missouri, Respondent.

No. 71703.

Supreme Court of Missouri, En Banc.

Jan. 10, 1990.

James K. Blickhan, William H. Pickett, Kansas City, for appellant.

Jeffrey L. Hess, Asst. City Atty., Richard N. Ward, City Atty., Kansas City, for respondent.

James J. Wilson, City Counselor, Elkin L. Kistner, Asst. City Counselor, St. Louis, Dennis Budd, Asst. City Atty., Springfield, for amici curiae City of St. Louis and City of Springfield.

ROBERTSON, Judge.

On May 3, 1985, appellant Deane Findley tripped and fell on the raised edge of a slab of sidewalk maintained by and within the corporate limits of Kansas City, Missouri ("the City"). She alleges serious injury as a result. On September 16, 1988, Findley sued the City for damages. The City moved to dismiss asserting that Findley had not complied with Section 82.210, RSMo 1986, which requires that a person so injured must give the mayor written notice of her claim within ninety days following her accident. The circuit court sus-

tained the City's motion to dismiss with prejudice.

Admitting that she failed to comply with the requirements of Section 82.210, Findley nonetheless comes to this Court claiming that the statute is unconstitutional. We have jurisdiction. Mo. Const. art. V, § 3. The judgment of the trial court is affirmed.

I.

Findley raises three constitutional challenges to Section 82.210, RSMo 1986. That statute says:

No action shall be maintained against any city of this state which now has or may hereafter attain a population of one hundred thousand inhabitants, on account of any injuries growing out of any defect in the condition of any bridge, boulevard, street, sidewalk or thoroughfare in said city, until notice shall first have been given in writing to the mayor of said city, within ninety days of the occurrence for which such damage is claimed, stating the place where, the time when such injury was received, and the character and circumstances of the injury, and that the person so injured will claim damages therefor from such city.[1]

At the outset we recall that statutes generally are presumed constitutional unless they clearly and undoubtedly contravene the Constitution. *Prokopf v. Whaley*, 592 S.W.2d 819, 824 (Mo. banc 1980).

A.

■ Findley first argues that Section 82.210 violates Mo. Const. art. I, § 14 "because it limits the rights of persons to seek redress in the courts." Mo. Const. art. I, § 14 provides: "That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay." She urges that the effect of the notice of claim statute is the same as if the legislature had imposed a ninety day

---

**1.** The General Assembly has enacted four notice of claim statutes: Section 77.600, RSMo 1986 (third class cities); Section 79.480, RSMo 1986 (fourth class cities); Section 81.060 (special charter cities with a population of 500 to 3,000); and Section 82.210 which is at issue here.

statute of limitations for injuries resulting from governmental negligence.

Findley's art. I, § 14 argument is that such a period of limitations is unreasonably short and effectively terminates both her access to the courts and her right to a certain remedy for her injury. She apparently finds some solace in *Laughlin v. Forgrave*, 432 S.W.2d 308, 314 (Mo. banc 1968). "Statutes of limitations are favorites of the law and will not be held unconstitutional as denying due process unless the time allowed for commencement of the action and the date fixed when the statute commences to run are clearly and plainly unreasonable." [Emphasis added].

Findley's argument is correct insofar as it acknowledges that the effect of failure to comply with the requirements of notice of claim statutes is the same as failure to file a cause of action within the statute of limitations. *Heater v. Burt*, 769 S.W.2d 127, 130 (Mo. banc 1989). Nevertheless, her argument fails to apprehend the teaching of *Schumer v. City of Perryville*, 667 S.W.2d 414, 418 (Mo. banc 1984): The distinction between notice of claim statutes and statutes of limitations is of "no moment" for purposes of determining whether minority tolls the running of either. However, notice of claim statutes are of a different origin; they find their root in sovereign immunity. Id. at 416.

The origin of the doctrine of sovereign immunity is traced "to a case which appeared in Sir Robert Brooke's La Graunde Abridgement published in England in 1573." *O'Dell v. School District of Independence*, 521 S.W.2d 403, 410 (Mo. banc 1975) (Finch, J., dissenting). In *O'Dell*, the Court held that "the common law adopted in Missouri when it came into the Union of states was that an action cannot be maintained for negligence against the public." *O'Dell*, 521 S.W.2d at 407.

The existence of sovereign immunity is a denial of a remedy to a person injured by the state. That sovereign immunity is constitutionally permissible [2] shows that Findley's claimed right to redress is not unfettered. The language of art. I, § 14 is found first in art. XIII, § 7 of the 1820 Constitution. Each of the state's constitutions adopted since statehood has carried identical language. Thus, long before this Court abrogated sovereign immunity in *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977), sovereign immunity stood side-by-side with the constitutional "certain remedy" provisions. There can be little doubt, therefore, that the framers of the constitution understood that sovereign immunity was part of the fabric of the common law when they adopted the constitutional language at issue here. Just as certainly, the framers did not intend for the "right to redress" provision to abrogate the public's immunity from suit.

For this reason, *Jones* did not find sovereign immunity either violative of art. I, § 14 or any other provision of the constitution. Nor did *Jones* discover that sovereign immunity carried a constitutional imprimatur. Instead, the Court determined that the doctrine was judge—made law and as judge—made law, it could be altered judicially. "We have considered the justifications for the continued validity of the doctrine and find them illogical, unconvincing and not compelled by constitutional mandate." *Jones*, 557 S.W.2d at 230. For this reason, this Court said more than a half century ago:

> We do not believe Sec. 10, Art. 2, of the constitution [of 1875, now art. I, sec. 14] was intended to create, of its own vigor, any new rights or remedies which were not in existence or recognized at the time of its adoption. We think it was designed to protect the citizen in the use of the courts to enforce such rights and remedies as were recognized by the law

2. Following the Court's abrogation of sovereign immunity in *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977), the General Assembly enacted a statute recloaking the government with immunity to the extent that such immunity existed as of the date of the *Jones* decision. Section 537.600, RSMo 1986,

with the exception of those specific acts of malfeasance or nonfeasance set out in Section 537.-610, RSMo 1986. In *Winston v. Reorganized School District R–2*, 636 S.W.2d 324 (Mo. banc 1982), this Court upheld the constitutionality of the legislative reinstatement of sovereign immunity.

at the time of its adoption and as might thereafter be created by law. *State ex rel. National Refining Co. v. Seehorn,* 344 Mo. 547, 127 S.W.2d 418, 424 (1939). And for this reason the Court said last month: "The right of access means simply the right to pursue in the courts the causes of action the substantive law recognizes." *Harrell v. Total Health Care, Inc.,* 781 S.W.2d 58, 63 (Mo. banc 1989).

This Court has not, nor does it now, read art. I, § 14 as containing any substantive rights. The right to seek redress for governmental torts exists not by virtue of constitutional edict but by governmental permission. Notice of claim statutes, rooted as they are in sovereign immunity, are terms and conditions imposed by the government on the government's waiver of its immunity. "[W]ithin constitutional limits, a sovereign may prescribe the terms and conditions under which it may be sued, and the decision to waive immunity, and to what extent it is waived, lies within the legislature's purview." *Winston v. Reorganized School District R–2,* 636 S.W.2d 324, 328 (Mo. banc 1982).

The discussion to this point has shown that sovereign immunity constitutionally vitiates an injured persons' right to redress. Under the common law, however, the maintenance of streets and sidewalks is a proprietary function of government to which common law sovereign immunity did not apply.

*Winston* shows that the legislature may constitutionally impose sovereign immunity by statute. Thus, on the same legal theory that supports the legislature's adoption of statutory sovereign immunity following its common law abrogation in *Jones,* Section 82.210 statutorily cloaks municipalities in a limited immunity for defects in certain publicly maintained property. ("No action shall be maintained...."). Immunity is waived if certain conditions precedent are met. ("Until notice shall first have been given to the mayor of said city within ninety days of the occurrence....").

It being constitutionally permissible for the legislature to cloak municipalities with immunity by statute, it necessarily follows that any waiver of immunity granted is subject to the limits imposed in the waiver. Art. I, § 14 neither intends nor compels a contrary result. The point is denied.

### B.

■ Findley next argues that Section 82.210 violates Mo. Const. art. I, § 2 and U.S. Const.Amend. XIV. In pertinent part, art. I, § 2 assures "that all persons are created equal and are entitled to equal rights and opportunity under the law...." The relevant portion of the Fourteenth Amendment declares that "No State shall ... deny to any person within its jurisdiction the equal protection of the laws."

Findley urges that Section 82.210 creates two classes of tortfeasors, municipal and non-municipal, and two classes of injured persons, those injured by municipal negligence who must notify the mayor of their claim within ninety days of their accident or lose their ability to seek damages, and those injured by non-municipal negligence, who may wait five years to bring suit. Section 516.120, RSMo 1986. Findley contends that neither classification is rationally related to a legitimate governmental purpose and thus each violates equal protection.

A "statute, as here, which neither touches a fundamental civil right nor involves suspect classifications will withstand an equal protection challenge if a rational basis for the legislative classification can be found." *Winston,* 636 S.W.2d at 327. At the outset of our obligatory search for an acceptable rationale for the legislature's determination, id. at 329, we are mindful that our own policy choices are irrelevant to any rational basis analysis.

As this Court intimated in *Schumer,* 667 S.W.2d at 417, n. 3, "a persuasive case can be made that any original justification for the statute no longer exists." The fact that we think the legislature's choices socially undesirable, unwise, or even unfair is of little consequence to our decision, however, if the legislature's classification advances the legislature's legitimate policy. The rational basis test does not require

that the legislative objective "be compelling nor the dilemma grave, nor that the legislature choose the best or wisest means to protect its goals." *Winston*, 636 S.W.2d at 328.

In *Winston*, this Court held that the legislature's readoption of sovereign immunity, Section 537.600, RSMo 1986, and waiver of immunity in limited circumstances, Section 537.610, RSMo 1986, did not violate equal protection. Obviously, Sections 537.-600 and .610 create two classes of governmental torts, those for which recovery could be sought and those for which it is barred. The class difference is based on sovereign immunity—the ownership of the property causing the injury. The statutes treat two classes of tortfeasors and those they injure differently: governmental tortfeasors for whom immunity is waived and nongovernmental tortfeasors are subject to liability—the injured person can receive damages; those governmental tortfeasors against whom claims are not permitted face no liability—an injured person may obtain no recovery. Because the classifications created do not violate the legislature's discretion beyond a reasonable doubt, *Winston*, 636 S.W.2d at 327, the Court found no equal protection violation. "It appears rationally desirable to refrain from opening the floodgates to tort claims arising from any and all governmental functions...." *Id.* at 329.

If the legislature can bar recovery entirely by the adoption of sovereign immunity, intending to close the floodgates to tort claims as in *Winston*, it follows that the legislature can choose for itself whether to open those floodgates widely or, as in this case, but a crack. By permitting suits against a municipality only where an injured person has complied with a notice of claim provision, the legislature has chosen to permit suits against cities only in narrow circumstances. The width of the waiver thus reflects a decision rationally related to the legislature's desire to minimize a municipality's exposure to liability claims. Various rationales are advanced to justify notice of claim statutes. They allow a city to investigate and defend against a claim. *Travis v. Kansas City*, 491 S.W.2d 521, 524

(Mo. banc 1973). They protect a city against stale claims by allowing the city to investigate promptly while witnesses are available. *Plater v. Kansas City*, 334 Mo. 842, 68 S.W.2d 800, 803 (1933). They permit investigation before time changes the conditions or obscures the memory of witnesses. *Wolf v. Kansas City*, 296 Mo. 95, 246 S.W. 236, 239 (1922). *Accord Reno v. City of St. Joseph*, 169 Mo. 642, 70 S.W. 123, 126 (1902). They permit the city to correct dangerous conditions promptly so as to avoid additional risk to its citizens and visitors and exposure to liability. Notice of claim statutes also limit the financial exposure of the government by requiring injured persons to notify the municipality quickly of their claim or lose the right to advance it. Each of these rationales presents a legitimate legislative concern.

As the harsh result in this case shows, the notice of claim statute does limit a city's liability; some persons lose their claim for relief and the public coffer's exposure to liability is thereby limited by the short notice period permitted. The statute is rationally related to a legitimate legislative concern.

Section 82.210 does not violate equal protection under the state or federal constitutions. The point is denied.

## C.

Finally, Findley claims that Section 82.-210 violates Mo. Const. art. I, § 10 and U.S. Const. Amend. XIV. The state constitutional provision guarantees that "no person shall be deprived of life, liberty or property without due process of law." The Fourteenth Amendment's relevant language provides that "No State shall ... deprive any person of life, liberty, or property, without due process of law." Findley's claims are that "Section 82.210 violates the due process guarantees of both the Missouri and United States Constitutions in that it deprives plaintiffs with legitimate and timely brought claims to access to the Courts."

Access to the courts is guaranteed in art. I, § 14. The argument offered and the

analysis required for this point is the same as is necessary to consider Findley's art. I, § 14 claim. This is because art. I, § 14 is but a second due process clause to our state constitution. See *Strahler v. St. Luke's Hospital*, 706 S.W.2d 7, 16–18 (Mo. banc 1986) (Welliver, J., dissenting), and *Harrell*, 781 S.W.2d at 63. Art. I, § 10, like art. I, § 14, guarantees no more than that a claimant is entitled to whatever process is constitutionally mandated or permitted under the laws extant at the time of claim. The conclusion reached in Part I, A, supra, controls here.

Findley's third point is denied.

## II.

The judgment of the circuit court is affirmed.

BLACKMAR, C.J., HIGGINS, COVINGTON, and BILLINGS, JJ., and DOWD, Special Judge, concur.

RENDLEN, J., concurs in result.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.