Jeannette Kay PITTOCK,
Plaintiff-Appellant,

v.

John William GARDNER, Executor of
the Estate of Mary Loomis Gibson,
Deceased, Defendant-Respondent.

No. 59128.

Supreme Court of Missouri,
En Banc.

·Dec. 8, 1975.

Glenn A. Burkart, Mann, Walter, Burkart, Weathers & Walter, Wear & Wear, Springfield, for plaintiff-appellant.

Karl Blanchard, Blanchard, VanFleet, Robertson & Dermott, Joplin, Lowther, Cassity, Ferguson & Freeman, Springfield, for defendant-respondent.

HOLMAN, Judge.

This action was instituted by plaintiff and her infant son to recover damages for personal injuries resulting from an automobile collision. Defendant, executor of the estate of Mary Loomis Gibson, filed a counterclaim against Mrs. Pittock seeking damages for decedent's alleged wrongful death. See Section 537.080(3).[1] The jury found for defendant on plaintiffs' claims and also returned a verdict for defendant in the sum of $3,000 on the counterclaim. No appeal was taken by the son but Mrs. Pittock (hereinafter referred to as "plaintiff") appealed to the Springfield District of the Court of Appeals.

On appeal plaintiff contends that the trial court erred in giving Instructions 6, 8 and 12. The appeals court concluded that No. 6 was not prejudicially erroneous and that it was unnecessary to consider 8 and 12 because they related to the counterclaim. Sua sponte the court held that the counterclaim did not state a claim for relief and that the evidence would not support a wrongful death claim. The judgment was reversed and the cause remanded with certain directions which need not be recited here. Upon application of plaintiff we ordered the case transferred and will decide it here the same as on original appeal. Art. V, Sec. 10, Mo.Const., V.A.M.S. We granted transfer because we were concerned about the effect of the 1973 revision of MAI 17.13 upon the contents of contributory negligence Instruction No. 6. We affirm the judgment for defendant on plaintiff's claim and reverse the judgment on the counterclaim.

It was undisputed that the northbound Ford driven by plaintiff collided head-on with the southbound Rambler operated by defendant's decedent when the Ford was on the west half or wrong side of the dual-laned highway. Plaintiff testified that as the two vehicles were approaching, the Rambler was in the northbound lane; that plaintiff, with the Ford "under control at all times," drove onto the left or west half of the roadway to avoid a collision, but that decedent then drove the Rambler to its right side of the highway, thereby causing the casualty to occur on plaintiff's wrong side of the road. To the contrary, defendant's theory was that decedent did not drive the Rambler on the wrong side of the road at any time. Mrs. Gibson, the driver of the Rambler, was killed as were the two other occupants of her car. The six occupants of plaintiff's car were all injured, but none were killed.

Plaintiff's case was submitted by Instruction No. 4 which reads as follows:

"Your verdict must be for plaintiff, Jeannette Kay Pittock, on said plaintiff's claim for damages if you believe:

"First, Mary Loomis Gibson drove on the wrong side of the road, and

"Second, Mary Loomis Gibson was thereby negligent, and

"Third, as a direct result of such negligence Jeannette Kay Pittock sustained damage, unless you believe Jeannette Kay Pittock is not entitled to recover by reason of Instruction Number 6.

"(Not in MAI, tendered by plaintiff, Jeannette Kay Pittock.)"

The submission of her son's claim was in the same language except for the reference to Instruction No. 6.

The instruction which is the basis of plaintiff's principal complaint, No. 6, reads as follows:

1. All statutory references are to RSMo 1969, V.A.M.S.

"Your verdict must be for the defendant on plaintiff Jeanette Pittock's claim for damages, whether or not Mary Loomis Gibson was negligent, if you believe:

"First, plaintiff Jeanette Pittock drove on the wrong side of the road, and

"Second, plaintiff Jeanette Pittock was thereby negligent, and

"Third, such negligence of plaintiff Jeanette Pittock directly caused or directly contributed to cause any injuries and damages plaintiff Jeanette Pittock may have sustained.

"(M.A.I. 32.01 Modified, Submitted by Defendant)"

Plaintiff says that the court erred in giving No. 6 because it was not applicable and that there was an applicable approved instruction "in the book" which should have been used. She points to the fact that Rule 70.01(b, c) provides that if MAI contains an applicable instruction it "shall be given to the exclusion of any other on the same subject" and "[t]he giving of an instruction in violation of the provisions of this Rule shall constitute error, its prejudicial effect to be judicially determined."

It is plaintiff's contention that MAI 17.13 should have been given. Prior to July 1, 1973, that instruction, which was designated for wrong side of the road submissions, read "Defendant drove on the wrong side of the road." The notes on use thereunder stated: "This is an optional submission of negligence which may be used as paragraph First of Verdict Directing 17.01 or as one of the alternate submissions in paragraph First of Verdict Directing 17.02. It may also be used as a submission in Contributory Negligence 32.01 and Wrongful Death 20.01 and 20.02." The Committee's Comment provided that: ". . . it should be remembered that mere skidding 'is not negligence and does not give rise to an inference of negligence.' " The statement of law last quoted was changed by the decision in *Friederich v. Chamberlain*, 458 S.W.2d 360, at page 366 (Mo.1970) where we stated that: ". . . if the skidding vehicle is on the wrong side of the road when the collision occurs, an inference of negligence is created. A prima facie case is made."

Because of *Friederich* and certain other decisions this court and its committee on jury instructions considered it advisable to revise 17.13 which was accomplished and approved, effective July 1, 1973, and published in the 1973 pocket parts of MAI. That revised instruction and the comment thereunder reads as follows: "Your verdict must be for plaintiff if you believe:

"First, defendant's automobile was on the wrong side of the road at the time of the collision; and

"Second, the defendant was thereby negligent; and

"Third, as a direct result of such negligence plaintiff sustained damage.

"Committee's Comment [Supplemental]

"1. This is the instruction to use in wrong-side-of-the-road cases—not limited to cases where the car got there by skidding.

"2. The law regarding the effect of skidding evidence in the case involving a motor vehicle accident on the wrong side of the road has been substantially revised by *Friederich v. Chamberlain*, 458 S.W.2d 360 (Mo.1970). The committee's comment on page 155 is modified; the skidding doctrine as heretofore promulgated is no longer the law in Missouri and in the event that there is proof that a vehicle has skidded onto the wrong side of the road when the collision takes place, an inference of negligence is created and a prima facie case is made. For this reason the foregoing modification is required in a 'skidding' case." (The instant case was tried in November, 1973).

Plaintiff points to Comment 1 and says that it means that this instruction must be used in all wrong-side-of-the-road submissions. Defendant, in answer to that contention, says that he used MAI 32.01 which is approved for use in contributory negligence

submissions. He also points out that Comment 1 under 17.13 does not contain the word "all" and that the portion of Comment 2 which says that the instruction is "required in a skidding case" would tend to indicate that it is not mandatory in all cases.

We must first settle the controversy outlined in the preceding paragraph. It was the intention of the instruction committee and this court to provide that the revised instruction should be used in all wrong-side-of-the-road cases in which it would be applicable. We so rule because we think Committee Comment 1 plainly so provides. Moreover, we have also examined correspondence between the chief justice and the chairman of the committee and find such an intent stated therein.

Obviously this instruction would not be properly applicable in every wrong-side-of-the-road case. This is demonstrated by the fact that it could not have been used by instant plaintiff in submitting her case. This because decedent's car admittedly was on its right side of the road when the collision occurred. To have given new 17.13 therefore would have been equivalent to directing a verdict for defendant on plaintiff's claim. *McCroskey v. Marshall*, 519 S.W.2d 717 (Mo.App.1975).

The foregoing, however, does not mean that the judgment for defendant on plaintiff's claim should be reversed and remanded. The new instruction changed the submission from "drove on the wrong side of the road" to "automobile was on the wrong side of the road at the time of collision." However, MAI 32.01 contained the words "drove on the wrong side of the road" and this instruction was not modified and nothing in the 1973 pocket parts in reference to that instruction referred to new 17.13. The same is true regarding MAI 17.02, 20.02, 33.04(5) and 35.01. It is obvious that the instructions committee and this court overlooked the necessity of modifying those instructions so that they would conform to new 17.13. The attorney for

defendant and the trial court properly relied on the authenticity of 32.01 and cannot be faulted for using it. Moreover, we have the view that, in any event, the giving of No. 6 in this instance was not prejudicial. This because plaintiff testified that she intentionally drove her car onto the left half of the road. Therefore, since the submission was in substantially the same words as the admitted fact it would be difficult to find any prejudice. We accordingly rule that the giving of Instruction No. 6 did not constitute prejudicial error.

As heretofore stated, the appeals court ruled, sua sponte, that defendant's counterclaim failed to state a claim and that the evidence supporting it was also insufficient. After transfer, appellant did not file any supplemental brief raising that point but it was referred to by both parties in argument so we consider that the question is before us.

The counterclaim alleged that defendant had been appointed executor of decedent's estate and that she had no surviving spouse or minor children. It was also alleged "That as a result of said death funeral expenses were incurred, and the estate of Mary Loomis Gibson and her beneficiaries have been damaged in the sum of $50,-000.00." Brief testimony on the part of defendant provided the only evidence in support of the counterclaim. He testified that decedent, who was 77 years old, was his wife's aunt and that his "wife was probably the only close family relative surviving"; that the funeral expenses were $1,089.40 which he paid as executor.

While Section 537.080(3) authorizes the executor to sue for the wrongful death of an adult who dies without leaving a spouse or minor children, "The amount recovered is not an asset of the defendant's estate, but belongs to those persons designated in the statute; and where the suit is brought by the administrator, he is a mere trustee to maintain the action for those entitled to the damages sought to be recovered." *Troll v. Laclede Gaslight Co.,* 182

Mo.App. 600, 169 S.W. 337, 339 (1914). The beneficiaries of the recovery are those to whom the estate of decedent "shall be distributed according to the laws of descent." It is essential to recovery, however, to plead and prove that any such heir shall have suffered a pecuniary loss by reason of the death. *Lynch v. St. Louis Public Service Co.*, 261 S.W.2d 521 (Mo.App.1953). "The test of the right of recovery under our death statutes is the reasonable probability of pecuniary benefit from the continued life of the deceased, or a pecuniary injury from the death," *Domijan v. Harp*, 340 S.W.2d 728, 734 (Mo.1960).

■ The counterclaim wholly failed to state a claim for relief. It did not allege that decedent had any heirs nor undertake to name any beneficiaries nor allege that any specific heir suffered a pecuniary loss by reason of decedent's death. And while there was testimony from which it could be inferred that defendant's wife, a niece, was decedent's legal heir there was no proof that she suffered any financial loss by reason of decedent's death. It follows from the foregoing that the judgment on the counterclaim cannot stand. And since there was no suggestion at the time of argument that the petition could be amended to state a claim or that proof could be made to support such a claim we see no necessity of considering whether it would be advisable to remand for further proceedings.

We accordingly rule that the judgment for defendant on plaintiff's claim should be affirmed and that the judgment for defendant on his counterclaim should be reversed.

It is so ordered.

SEILER, C. J., and MORGAN, HENLEY, FINCH and DONNELLY, JJ., concur.

BARDGETT, J., concurs in result.