Sarah R. POWELL, et al., Appellants,

v.

AMERICAN MOTORS CORPORATION,
et al., Respondents.

No. 73994.

Supreme Court of Missouri,
En Banc.

June 2, 1992.
Rehearing Denied June 30, 1992.

William C. Pickett, David T. Greis, Kansas City, for appellants.

Frederick K. Starrett, Curtis L. Tideman, Overland Park, Kan., James M. Ziegler, Independence, for respondents.

THOMAS, Judge.

This action arises out of a one-car accident that occurred on September 28, 1985, when a Jeep CJ–7 vehicle driven by Charles R. Jacobs went out of control, struck a guard rail and rolled over. It is alleged that as a direct result of the accident Charles R. Jacobs "suffered severe and permanent injuries to his body including traumatic brain injury, resulting in cognitive deficits, physical impairment and a general inability to care for himself independently." The defendants below, respondents here, are American Motors Corporation and Galen Boyer Motors, Inc., the manufacturer and seller, respectively, of the Jeep CJ–7 vehicle involved in the accident.

Prior to the filing of the present lawsuit, Charles R. Jacobs, the injured party, who has never been married and at the time of his accident had reached the age of majority, brought an action against respondents for his injuries; Mr. Jacobs and respondents settled and released respondents for all of Charles' claims. The appellants in the present action are Sarah Renee Powell, Charles' daughter, who was six months old at the time of the accident and lived with her mother, and James and Frances Jacobs, the parents of Charles. Sarah's claim is based upon an alleged loss of parental consortium (damages to a child for injury to the child's parent). James and Frances Jacobs claim damages for loss of filial consortium (damages to parents for injury to their child). The trial court granted respondent's Motion for Judgment on the Pleadings because Missouri law does not recognize causes of action for loss of parental or filial consortium. Appellants appeal claiming this Court should change the common law of Missouri to recognize these consortium claims. In the alternative, appellants claim that the Due Process Clauses and Equal Protection Clauses of the Constitution of the United States and the Constitution of Missouri require that Missouri allow recovery for loss of parental

and filial consortium in the case of personal injury. We granted appellants' application to transfer the appeal to this Court prior to opinion in the court of appeals.

Missouri has never recognized a common law cause of action by a child for injuries sustained by a parent. A statement to this effect in *Stout v. Kansas City Terminal Ry. Co.*, 172 Mo.App. 113, 157 S.W. 1019 (1913), has been cited from time to time as authority for this proposition. In 1979, the Court of Appeals, Eastern District, was presented directly with the issue of whether a 9–year–old girl could recover for the loss of her mother's services, society, companionship and affection as a result of severe brain damage suffered by the mother in an automobile accident. In *Bradford v. Union Electric Co.*, 598 S.W.2d 149 (Mo. App.1979), the Court of Appeals, Eastern District, affirmed the trial court's dismissal of plaintiff's petition for failure to state a cause of action.

■ Ten years later in *Barbera v. Brod–Dugan Co.*, 770 S.W.2d 318 (Mo.App.1989), the Court of Appeals, Eastern District, again refused to recognize a claim for loss of parental consortium under Missouri common law. The court in *Barbera* said the prevailing view in other jurisdictions is against recognizing such a cause of action. It mentioned the threat of double recovery, the concern of the courts over the increased social burden through multiplication of litigation and the burden of increased insurance costs as reasons for concluding that the adoption of such a cause of action is a question of public policy that should be left to the legislature. The *Barbera* court also rejected several constitutional grounds asserted to require the adoption of such a cause of action. This Court denied transfer in *Barbera*. After careful consideration of the thorough briefs filed by the parties herein and the extensive authorities relied on therein, we conclude that if Missouri is to recognize a cause of action for loss of consortium by the children or the parents of an injured party, the decision to do so should be made by the legislature and not by this Court. For the reasons discussed herein, we de-

cline to create either cause of action by case decision.

Most courts that have considered these causes of action have discussed whether allowing recovery by both the injured party and the children and/or parents constitutes an overlapping or duplication of damages. Appellants contend these causes of action would not be duplicative, pointing to the scheme of damages for wrongful death in Missouri under section 537.080, RSMo 1986. In fact, appellants take their argument one step further than merely analogizing to the wrongful death damage scheme to rebut any claim that damages on behalf of the child or parents of the injured party would be redundant. Appellants contend as affirmative support for their argument that because children are allowed to recover their independent damages that directly result from the death of a parent, comparative fairness and equality of treatment require the same type of damages in the case of injury to a parent. We believe both of these contentions overlook important aspects of the scheme for damages under the Missouri Wrongful Death Statute.

All American jurisdictions except Hawaii and Massachusetts have required statutory authority for a wrongful death recovery. These statutes generally fall into one of two categories: the "Lord Campbell" type of statute, which creates a new cause of action in and on behalf of the decedent's survivors for the economic losses they have sustained as a result of the wrongful death of the deceased, and the so-called "loss to the estate" type of action, which determines an economic value for the projected life span of the decedent in the absence of the wrongful death and assesses damages based upon premature destruction of that economically productive unit. *See* Frederick Davis, *Wrongful Death*, 1973 Wash. U.L.Q., 327, 330–331 (1973). The over-whelming majority of states, including Missouri, have "Lord Campbell" type statutes, which determine damages for wrongful death based upon the reasonable value of services, consortium, companionship, comfort, instruction, guidance, counsel, training and support, which the specified class of survivors of the decedent have been deprived of by reason of the death.

■ The first such class of survivors under the Missouri statute consist of the spouse, children and parents of the deceased.[1] Professor Davis, in his article on the Missouri Wrongful Death Statute, refers to the damages measured by the loss to the survivors as "relational" damages because they are based upon damage sustained by the survivors of the decedent as a result of the interference with the relationship between the survivors and the decedent. Statutes that base wrongful death damages on the loss to the decedent's estate are often referred to as "survivorship" statutes. The important point is that most statutes do not allow recovery of both types of damages; they allow one or the other. Under the Missouri statute, survivorship damages incurred by the decedent before death, such as medical expenses and pain and suffering, are recoverable as part of the wrongful death claim. No recovery, however, is allowed for damages to the decedent caused by the death itself. There is no recovery allowed by the decedent for his or her shortened life, either in terms of economic loss or in terms of the premature termination of the pleasures of life. Thus, instead of supporting appellants' claim that there should be a claim for damages both on behalf of the injured party and on behalf of his or her children and parents, the scheme of damages under the Missouri Wrongful Death Statute suggests that damages should be recovered on behalf of one or the other, but not both. It would appear that the legislature has applied this

---

1. Section 537.080, RSMo. The action can be brought in the name of one or more of the members of the class. Whether only the spouse is the named plaintiff or all members of the class are named, the damage instruction directs the jury to determine the damages sustained by all of the survivors. The verdict returned by the jury assesses total damages for all members of the class. Following a verdict or a settlement, the trial judge holds a hearing at which he allocates the total verdict or settlement among the various members of the class. § 537.095, RSMo.

rationale both in enacting the Wrongful Death Statute and in refraining from enacting legislation to provide for consortium claims on behalf of children of injured parties in the face of the holding of the court of appeals in *Bradford* and *Barbera.*

Moreover, we believe that there would be, at least in theory, a duplication of damages if this Court were to allow a cause of action for loss of consortium by the children and/or parents of an injured party. In discussing the general nature and theory of damages, it has been said:

> The primary object of an award of damages in a civil action, and the fundamental principle or theory on which it is based, is just compensation, indemnity, or reparation for the loss or injury sustained by the injured party, so that he may be made whole, and restored, as nearly as possible, to the position or condition he was in prior to the injury (footnotes omitted).

25 C.J.S. *Damages*, § 3 (1966). *Kincaid Enterprises, Inc. v. Porter*, 812 S.W.2d 892, 900 (Mo.App.1991). The concept of damages sufficient to make the plaintiff whole is commonly discussed in connection with a claim of excess damages, but it is equally applicable in a case where damages are claimed to be inadequate.

It must be conceded initially that money damages will often be inadequate to replace the loss of physical or mental capacity that a severely and permanently injured plaintiff may have sustained. However, this concession is a product of the inherent inadequacy of substituting money damages for physical or mental well-being; it is not the result of the failure of the law to direct the jury to award damages for all of the injuries plaintiff has sustained and to make every effort to make plaintiff whole again. We instruct the jury: "You should award plaintiff such sum as you believe will fairly and justly compensate plaintiff for *any* damages you believe he sustained or is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence." *See*, MAI 4.01. If the jury awards plaintiff sufficient damages to fully cover his injuries and thus constructively makes him a whole person again, then any additional damage that would be awarded to his children or parents would be overlapping. Put another way, children of an injured party had a certain type of relationship with their parent prior to the injury. After the injury, they continue to have a relationship with the same parent who is now in receipt of sufficient damages to make him a "whole" person and, presumably, as effective a parent as he was before. If this Court were to establish an independent cause of action on behalf of the child or the parents of the injured party for the injuries they sustained, such recoveries would, in theory, duplicate some portion of the damages determined by the jury as the amount necessary to fully compensate the injured party.

Appellants, in effect, acknowledge this principle by quoting from cases in their brief that have argued it is preferable to have a separate cause of action on behalf of children and to instruct the jury on the allocation of damages between the children's claim and the injured party's claim. In *Hay v. Medical Center Hospital of Vermont*, 145 Vt. 533, 496 A.2d 939 (1985), the court stated:

> The recognition of a separate cause of action on behalf of a minor child, however, will allow juries to properly allocate losses among the separate claims of multiple plaintiffs. We are confident in the ability of the trial court judges to give adequate jury instructions concerning the computation and allocation of damages, and of juries to follow such instructions.

*Id.* at 944. We agree with appellants' argument that there is no reason whatsoever to believe that Missouri judges and juries would be incapable of differentiating between the items of damage allowed to a parent and a child. Appellants concede that an instruction different than the one presently given would be required to direct the jury with respect to allocating damages between the child and the injured parent. This concession strongly suggests that the damages attributable to the disruption of the relationship between the child and the injured parent are presently included in the

damages awarded to the injured parent and that the primary issue being presented to the Court in this case is whether those claims for damages should be bifurcated and handled as separate claims. Viewed in this light, the claims of appellants become more procedural than substantive and much less compelling.

In support of a cause of action for loss of consortium by children, appellants point to the fact that Missouri recognizes and allows a common law cause of action for loss of consortium by the spouse of an injured person. Courts that have distinguished between the spousal relationship and the parent/child relationship have noted that the spousal relationship is contractual, whereas the parent/child relationship is one of chance. Courts have contended that this fact justifies the recovery in the first instance but not in the second. *Id.* Appellants reject this as a basis for compensation for loss of consortium by a spouse but not by a child. Courts have also stated that the spousal relationship is permanent, whereas the parent/child relationship, although biologically permanent, tends to change over time. *Steiner v. Bell Telephone Co. of Pennsylvania*, 358 Pa.Super. 505, 517 A.2d 1348, 1353 (1986), *aff'd without opinion*, 518 Pa. 57, 540 A.2d 266 (1988). Appellants reject this argument, pointing to the divorce rate in this country as some evidence that the parent/child relationship may be the only truly permanent human relationship. Other courts have explained the recovery for spousal loss of consortium as an outgrowth of the historical "unity of spouses" view, which was based upon the fiction that marriage merges the identities of the spouses into a single unit so that injury to one is injury to the other. *Id.*, 517 A.2d at 1355; *W.J. Bremer Co. Inc., v. Graham*, 169 Ga.App. 115, 312 S.E.2d 806, 808–809 (1983). Appellants point out that this view is not only now discredited, but generally legislated out of existence by the various married women's acts. *See* §§ 451.250–451.300, RSMo 1986.

The most common explanation for allowing recovery for loss of consortium by a spouse, but not by other parties such as children or parents, is the impairment or destruction of the sexual life of a married couple by a tort-feasor as an element of damage in the spouse's consortium action, whereas this element is not present in a claim for damages for loss of consortium by a child or a parent. *Koskela v. Martin*, 91 Ill.App.3d 568, 47 Ill.Dec. 32, 414 N.E.2d 1148 (1980). Appellants discount this difference as a basis for denying a recovery for loss of consortium to children and parents, pointing out that there are other elements, such as love, affection, care and companionship, that, aside from the sexual relationship involved between the spouses, support a legitimate consortium recovery for both spouses and children.

■ Viewed in the foregoing light, the issue really becomes a question of where to draw the line between persons who will be allowed to recover their own separate damages as a result of injuries to a person with whom they have a relationship and those who will not be allowed such a recovery. Present Missouri law draws the line between spouses who are allowed to recover on a consortium claim and everyone else who is not. Appellants would allow recovery by spouses, children and parents and exclude everyone else from a recovery. If you accept the premise that appellants should prevail because of a compelling argument that children and parents of the injured party sustain damages that will otherwise not be adequately reimbursed, then you must also acknowledge that there will be other people who, depending on the facts, can make the same compelling argument. For example, could a child recover for personal injury to a grandparent or an aunt or uncle who is fulfilling the role of a parent for the child?

Suppose the injured person is an irreplaceable, key employee of a business and there is no question that the business will sustain actual economic damage as a result of the unavailability of this employee to the business in the future. Should representative damages be allowed under these circumstances to the business? If you accept appellants' argument that damages incurred by persons as a result of the disruption of their relationship with the injured

party should be separately recoverable, the rationale for the rule rests upon a slippery slope where line drawing is difficult and, at best, will vary from circumstance to circumstance based upon the facts. A case can be made for drawing the line where the appellants would draw it by allowing only spouses, children and parents to recover for loss of consortium for injured parties. We believe an equally valid argument can be made for drawing the line where present Missouri law draws it, *i.e.*, between spouses and all other parties. The choice is really a public policy decision that we believe the legislature is best equipped to make.

In recent years, many other jurisdictions have considered these issues; both appellants and respondents devote substantial portions of their briefs to the question of how other jurisdictions have handled these issues and whether a trend is discernible. Appellants include a table in their Reply Brief showing that of the twenty-four jurisdictions that have considered the issue of parental consortium in the past ten years (not including Missouri), ten of those jurisdictions have recognized parental consortium. Appendix A to Respondents' Brief cites twenty-seven jurisdictions (not including Missouri) that have rejected parental consortium and eleven that have adopted it. Appellants maintain that seventeen jurisdictions have rejected filial consortium while seven jurisdictions have allowed such claims. Respondents maintain that eighteen of twenty-three jurisdictions that have considered filial consortium have rejected it. Neither the details nor the numerical results of these score cards is of particular importance in resolving this issue. Just as "beauty lies in the eyes of the beholder," what constitutes a trend and what that trend is depends mostly on the viewpoint of the advocate analyzing the cases. The important point is that these issues are currently and regularly being considered by other courts and are being decided both for and against the recognition of the causes of action sought by appellants. We view this as further evidence that there are meritorious policy arguments on opposing sides of these issues and as further support for

our conclusion that this Court should defer to the Missouri legislature.

There are additional policy considerations in deciding whether to recognize a separate cause of action for loss of consortium for children and parents of an injured party. Respondents cite increased costs of litigation as a reason to reject appellants' claims. Without attempting to resolve whether there would be increased damages paid, we would note that the essence of appellants' proposal is to create separate consortium causes of action for children and parents of injured parties. If treating these claims as separate claims results in additional damages, then obviously the cost of paying those damages would be increased. If there is no increase in the amount of damages, which are merely allocated specifically to particular claims of the children and the parents of the injured party, then there would at least be some additional multiplication of litigation. The extent of that multiplication would depend upon whether the separate claims are brought as a part of the main claim for personal injury or whether it is brought as a true separate claim of the respective children and the parents.

This leads us to comment on a final and important reason as to why this should be a legislative decision. The decision to establish the consortium causes of action sought by appellants carries with it a vast array of ancillary issues as to how these separate claims will proceed. Will one representative of the injured party, the children and the parents, be the representative plaintiff for all the claims as in a wrongful death case in Missouri under section 537.-080? If so, how will the damages be allocated as between the respective damaged parties? If each plaintiff will bring an individual claim for his or her damages, will some or all of the several claims be consolidated when possible? If it is not possible to consolidate them, may they be tried separately in other jurisdictions where there is venue, and, if so, where and under what circumstances? Will the defendant have the option of consolidating several different claims in a single action? Will

each individual plaintiff control settlement with respect to his or her claim? Will the same statute of limitations apply to all of the claims, and, if so, what statute of limitations controls? Will the statute of limitations covering a minor's claims for consortium be tolled under section 516.170, RSMo 1986, so that the statute of limitations does not run before the minor reaches age 21? This is only a sampling of the related questions that will accompany the creation of new causes of action such as the claims sought by appellants. If Missouri were to recognize these additional causes of action, their adoption should be accompanied by a carefully planned and well-thought-out scheme for handling the additional separate, but related, questions that will be created and the ensuing legal issues that will develop in connection with those claims. Embarking into a new area of litigation such as this lends itself better to prospective legislative enactment than to the case-by-case, issue-by-issue approach that this Court would be required to undertake if these causes of action were to be recognized by common law decision.

■ Appellants contend that the Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and Article I, Section 2, of the Missouri Constitution require the legislature to affirmatively adopt substantive law allowing recovery for parental and filial consortium. Appellants argue that Missouri's failure to provide these causes of action while at the same time providing for similar recoveries for parents and children of tort victims who die, § 537.080, RSMo, and for spouses of tort victims, *Manley v. Horton*, 414 S.W.2d 254 (Mo.1967), violates equal protection.

■ Equal protection analysis involves a two-step process. The first step requires the court to determine whether the classification burdens a "suspect class" or impinges upon a "fundamental right." If neither is involved, the classification will be sustained if it is rationally related to a legitimate interest. *Mahoney v. Doerhoff Surgical Services*, 807 S.W.2d 503, 512 (Mo. banc 1991). "Fundamental rights" include freedom of speech, freedom of the press,

freedom of religion, the right to vote and the right to procreate. *Mahoney*, 807 S.W.2d at 512, and *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 829 (Mo. banc 1991). A "suspect class" is one that is inherently suspect in a constitutional sense such as classes "based upon race, national origin or illegitimacy, which, because of historical reasons, need special protection from a political process controlled by the majority." *Blaske*, 821 S.W.2d at 829, *citing Mahoney*, 807 S.W.2d at 512.

Appellants argue that their rights to parental and filial consortium are fundamental liberty interests. Although appellants concede that they have not found a case holding that the maintenance of their respective parent/child relationships with Charles, the injured party, is a fundamental right under the constitution, appellants rely upon *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), and *Glona v. American Guarantee & Liability Insurance Company*, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968), for the proposition that the maintenance of familial relationships is a fundamental right. Both *Levy* and *Glona* held it was a denial of equal protection to prohibit illegitimate children or parents of illegitimate children from recovering for the wrongful death of their parent or their illegitimate children, respectively. Similarly, appellants cite *Weber v. Aetna Casualty & Surety Company*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1962), in which the Court held it was a denial of equal protection to allow legitimate children to recover workers' compensation benefits for the death of their father, but to deny recovery to his illegitimate children. The cases cited do not hold that the familial relationships between parents and children are fundamental rights. In fact, they involve a suspect class (illegitimate versus legitimate children) and merely hold that there is no reason for distinguishing between the benefits statutorily provided to legitimate children and denied to illegitimate children. Here, the principles of law about which appellants complain do not distinguish between illegitimate and legitimate children,

and appellants do not allege that they are members of a suspect class.

■ Because neither a denial of a fundamental right nor a suspect class is present in this case, the second step of equal protection analysis requires the court to determine what classifications the legislature established and whether the classification can conceivably be rationally related to a legitimate state interest. *Mahoney*, 807 S.W.2d at 512. Under rational basis review, this Court will not question the legislature's choices if the classification advances a legitimate policy. *Findley v. City of Kansas City*, 782 S.W.2d 393, 396 (Mo. banc 1990). Our legislature could have reasonably conceived that such a classification would avoid an overlapping or duplication of damages, limit the expansion of tort liability to the parent/child relationship, and avoid an increased burden on society, as discussed earlier in this opinion. Therefore, equal protection has not been violated.

■ Next, appellants assert that the dismissal of their claims for parental and filial consortium denies them access to the courts in violation of the open courts provision of the Missouri Constitution. Article I, Section 14 provides:

> [t]hat the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay.

This Court has previously determined that the constitutional right of access assures Missourians the "right to pursue in the courts the causes of action the substantive law recognizes." *Mahoney*, 807 S.W.2d at 510, and *Findley*, 782 S.W.2d at 396. The open courts provision does not require the adoption of substantive law allowing recovery or relief not presently provided for by existing substantive law. *Blaske*, 821 S.W.2d at 833.

■ Finally, appellants claim that their right to parental and filial consortium is a fundamental liberty interest under the Due Process Clauses of Article I, Section 10, of the Missouri Constitution and the Fourteenth Amendment of the United States Constitution. Appellants assert that the state denied them procedural due process by denying them an opportunity to be heard through a trial on the merits, thus, allowing a tort-feasor to escape accountability for the damages inflicted on familial relationships. First, as illustrated in the equal protection analysis, the appellant has not been deprived of a liberty or property interest protected by the due process clause. Second, the due process clause does not require the adoption of substantive law allowing recovery or relief not presently provided for by existing substantive law. *Blaske*, 821 S.W.2d at 834, and *Mahoney*, 807 S.W.2d at 512. Appellants ask this Court to protect them from the arbitrary and unreasonable inaction of the state that allegedly violates due process. This argument, however, presents the same contention presented in the equal protection analysis above and does not need to be reviewed again. In evaluating this constitutional challenge, we are entitled to presume that the legislature deliberately chose not to create an action for parental or filial consortium. *Blaske*, 821 S.W.2d at 835. Such a question is a matter of public policy. Questions of public policy are to be determined by the legislature. *State v. Dunbar*, 360 Mo. 788, 230 S.W.2d 845, 849 (1950). Due process has not been violated. For the above reasons, appellants' constitutional challenges are denied.

For all the reasons discussed herein, we decline to recognize a common law cause of action in either children or parents of an injured party. We affirm the trial court's dismissal of appellants' petition.

ROBERTSON, C.J., COVINGTON, HOLSTEIN and BENTON, JJ., and BLACKMAR and RENDLEN, Senior Judges, concur.

PRICE, J., not participating because not a member of the Court when the case was submitted.