**Thomas SULLIVAN, Plaintiff ad Litem, Appellant,**

v.

**Susan H. CARLISLE, Respondent.**

No. 75023.

Supreme Court of Missouri, En Banc.

April 20, 1993.

511

Thomas Sullivan and Edward L. Fitzgerald, Kansas City, for appellant.

Lance W. LeFevre, Kansas City, for respondent.

PRICE, Judge.

Thomas Sullivan, plaintiff ad litem, appeals the dismissal of his first amended petition for damages resulting from the death of Mary Catherine McCarty. We affirm and find that plaintiff's claim fails because decedent's estate is not a "person entitled to share in the proceeds of such action" under the wrongful death statute, §§ 537.080 to 537.100, RSMo.[1]

---

1. All references are to RSMo 1986 except § 537.- 080, RSMo Supp.1992.

## I.

In reviewing the circuit court's dismissal of a petition, the Court determines if the facts pleaded and the inferences reasonably drawn therefrom state any ground for relief. We treat the facts averred as true and construe the averments liberally and favorably to the plaintiff. A petition will not be dismissed for failure to state a claim if it asserts any set of facts which, if proved, would entitle the plaintiff to relief. *Martin v. City of Washington*, 848 S.W.2d 487, 489 (Mo. banc 1993).

Viewed in the light most favorable to plaintiff, the petition establishes that on June 27, 1990, decedent Mary Catherine McCarty was walking on the public sidewalk across defendant Susan H. Carlisle's driveway when she was run over by a car driven by defendant. She suffered numerous severe injuries, which led to her death seventeen days later. Decedent was not survived by any spouse, child, parent, sibling, or their descendants, and in fact appears to have no living kin. Her will devises her property to charitable organizations.

Plaintiff, the personal representative of decedent's estate, was appointed plaintiff ad litem on his own motion for the purpose of instituting this action on behalf of the estate. His petition seeks damages for decedent's injuries and suffering prior to her death, hospital and medical expenses, and funeral expenses incurred by the estate. Additional damages are sought for the loss of accumulations that decedent would have made to her estate had she lived out her life expectancy. Plaintiff asks that the proceeds of this action be distributed according to decedent's will or, alternatively, "according to the laws of descent" as provided in § 537.095.

Defendant filed a motion to strike the appointment of the plaintiff ad litem and to dismiss the petition. The court sustained the motion to dismiss, holding that there is no person capable of bringing an action for wrongful death under § 537.080 or entitled to share in the proceeds of such an action under § 537.095. The court also ruled that the statutes make no provision for a decedent's estate to recover the proceeds of a wrongful death action. This appeal followed.

## II.

Wrongful death is a statutory cause of action. *Powell v. American Motors Corp.*, 834 S.W.2d 184, 186 (Mo. banc 1992); *Hagen v. Celotex Corp.*, 816 S.W.2d 667, 674 (Mo. banc 1991). Well-settled principles of statutory interpretation require us to ascertain the legislative intent from the language of the act, considering the words used in their plain and ordinary meaning, and to give effect to that intent whenever possible. *State v. Knapp*, 843 S.W.2d 345, 347 (Mo. banc 1992). If the statute is ambiguous, we attempt to construe it in a manner consistent with the legislative intent, giving meaning to the words used within the broad context of the legislature's purpose in enacting the law. *State ex rel. Missouri Hwy. & Transp. Com'n v. Alexian Brothers of St. Louis, Inc.*, 848 S.W.2d 472, 474 (Mo. banc 1993).

In relevant part, § 537.080.1 defines who may bring a wrongful death action as follows:

(3) If there be no persons in class (1) [spouse, children or their lineal descendants, or parents] or (2) [siblings or their descendants] entitled to bring the action, then by a plaintiff ad litem. Such plaintiff ad litem shall be appointed by the court having jurisdiction over the action for damages provided in this section *upon application of some person entitled to share in the proceeds of such action.* Such plaintiff ad litem shall be some suitable person competent to prosecute such action and *whose appointment is requested on behalf of those persons entitled to share in the proceeds of such action....* (Emphasis added.)

The persons entitled to share in the proceeds recovered by the plaintiff ad litem are determined by § 537.095.2, which states:

When any settlement is made, or recovery had, by any plaintiff ad litem, *the persons entitled to share in the proceeds thereof shall be determined ac-*

*cording to the laws of descent,* and any settlement or recovery by such plaintiff ad litem shall likewise be distributed according to the laws of descent unless special circumstances indicate that such a distribution would be inequitable, in which case the court shall apportion the settlement or recovery in proportion to the losses suffered by each person or party entitled to share in the proceeds.... (Emphasis added.)

Plaintiff's first point asserts that the estate of decedent is, in effect, a "person" entitled to share in the proceeds of an action for her wrongful death and to request the appointment of a plaintiff ad litem to prosecute the action on its behalf. But the statute restricts class (3) residual beneficiaries to those persons who may take under the laws of descent. *§537.095.* The word "descent" refers to hereditary succession by intestacy and not to devise by will. *Cook v. Daniels,* 306 S.W.2d 573, 576 (Mo.1957), *citing* 26A C.J.S. p. 502; *Black's Law Dictionary* 445 (6th ed. 1990). Thus, by definition, a deceased person's estate is not a taker under the laws of descent. Accordingly, the estate of decedent can neither share in the proceeds of this action nor request the appointment of a guardian ad litem to prosecute it.

Numerous Missouri decisions are in accord. Our courts have consistently denied a cause of action for wrongful death to the decedent's estate, even when there is no surviving heir. *See Pittock v. Gardner,* 530 S.W.2d 217, 221 (Mo. banc 1975); *Acton v. Shields,* 386 S.W.2d 363, 366 (Mo. 1965); *Caen v. Feld,* 371 S.W.2d 209, 212 (Mo.1963); *Demattei v. Missouri–Kansas–Texas R.R.,* 345 Mo. 1136, 139 S.W.2d 504, 505–6 (1940); *Martin v. Southwestern Bell Tel. Co.,* 344 Mo. 83, 125 S.W.2d 19, 19 (1939); *Johnson v. Dixie Mining & Dev. Co.,* 187 S.W. 1, 1 (Mo.1916); *Kirk v. Wabash R.R.,* 265 Mo. 341, 177 S.W. 592, 593 (1915); *Troll v. Laclede Gaslight Co.,* 182 Mo.App. 600, 169 S.W. 337, 339 (1914).

The wrongful death action was designed to compensate specifically designated relatives for the loss of the decedent's economic support. *See Troll,* 169 S.W. at 339–40. Wrongful death statutes generally follow one of two approaches. The most common type is the "Lord Campbell" statute,[2] which permits the recovery of what has been termed "relational" damages by a specified class of survivors of the decedent. These damages are measured by the economic and emotional losses arising out of the disruption of the survivors' relationship with the deceased. The second, and less prevalent, type is the "loss to the estate" statute, which determines the economic loss sustained by the decedent's estate by reason of the premature death. This type is also known as a "survivorship" statute, because it transmits to the estate the decedent's right to the economic value of his own projected life-span. Most statutes allow either relational or survivorship damages, but not both. *Powell,* 834 S.W.2d at 186.

From the adoption in 1855 of our earliest wrongful death statute[3] until 1979, Missouri had a classic "Lord Campbell" type of action. Recovery was limited to the reasonably ascertainable pecuniary losses suffered by the statutory beneficiaries because of the death. *See O'Grady v. Brown,* 654 S.W.2d 904, 907 (Mo. banc 1983); *Acton,* 386 S.W.2d at 366. The right to sue was originally granted only to the spouse and minor children, or to the parents if the decedent was an unmarried minor.[4] Beginning in 1907, the executor or administrator of the estate was given the right to sue in the absence of a surviving spouse, child, or parent, and to distribute the amount recovered "according to the laws of descent".[5] The executor or administrator was deemed to act as a trustee for the benefit of the persons described in the statute. *Pittock,* 530 S.W.2d at 220–1; *De-*

**2.** Named after Lord Campbell's Act, the first statute to partially abrogate the English common law rule against tort recovery for wrongful death. 9 & 10 *Vict.,* c. 93 (1846).

**3.** R.S. 1855, pp. 647–9, Ch. 51, §§ 2–4.

**4.** *Id.* p. 648, § 2.

**5.** Laws 1907, p. 252.

*mattei,* 139 S.W.2d at 506; *Troll,* 169 S.W. at 339.

In 1979, the General Assembly substantially altered our wrongful death statute by expanding the range of recoverable damages. In addition to pecuniary losses suffered because of the death, beneficiaries may now recover funeral expenses and "the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support" of the deceased. They may also recover the damages incurred by the deceased between the time of injury and the time of death. *§ 537.090.* These changes resulted in a combined "death and survival" statute.[6] *Powell,* 834 S.W.2d at 186; *Stiffelman v. Abrams,* 655 S.W.2d 522, 531 (Mo. banc 1983).

But nothing in the 1979 amendment extends the cause of action to the decedent's estate. The statute still directs that the residual beneficiaries be determined "according to the laws of descent," as it has since 1907. *§ 537.095.2.* Recovery is still denied for certain significant types of damages caused by the death itself *to the deceased,* such as the loss of future earnings and deprivation of the pleasures of life. *Powell,* 834 S.W.2d at 186. In fact, the amendment severed the only potential link with the decedent's estate, by transferring the right to sue on behalf of the residual beneficiaries from the administrator or executor to the more generic plaintiff ad litem. *§ 537.080.1(3); Stiffelman,* 655 S.W.2d at 532.

### III.

Nonetheless, plaintiff urges that our statute is no longer to be considered as restricting the rights of parties damaged by the wrongful death of another, citing this Court's abandonment of the rule of strict construction in *O'Grady.* 654 S.W.2d at 908. That characterization is a distortion of the principle calling for the liberal

construction of remedial acts. As plaintiff notes, the statute does leave some room for the judicial development of wrongful death remedies. *Id.* at 911. Yet *O'Grady* recognizes that a remedy is available only to those persons specified in the statute:

> The manifest purpose of our statute is clearly to provide, *for a limited class of plaintiffs,* compensation for the loss of the 'companionship, comfort, instruction, guidance, counsel, ... and support' of one who would have been alive but for the defendants' wrong.

*Id.* at 908 (emphasis added); *accord Powell,* 834 S.W.2d at 186. Contrary to plaintiff's assertion, the wrongful death statute continues to restrict the rights of parties affected by an untimely death, by drawing the line between those who will and those who will not be allowed to recover damages by reason of the death. *See Powell,* 834 S.W.2d at 188.

Moreover, no recovery by the estate can fulfill the "manifest purpose" of the wrongful death statute cited above. The statute is primarily intended to compensate bereaved survivors for the loss of the decedent's companionship and support. An incorporeal entity is not capable of sustaining that kind of loss.

Plaintiff correctly points out that this Court has discerned two additional objectives behind the statute: "to ensure that tortfeasors pay for the consequences of their actions, and generally to deter harmful conduct which might lead to death." *O'Grady,* 654 S.W.2d at 909. We recognize that our statute leaves these important objectives unfulfilled when, as is the case here, the victim has no kin. Conceivably, these objectives could be met by having the estate assume the role of taker of last resort when a decedent dies without heirs.[7] But our statute is not so written. While such objectives may be desirable, the

---

**6.** The words "survival" or "survivorship" are used here to describe certain types of damages available under the wrongful death statute. This statute should not be confused with the so-called "survival statutes," which ensure that *pre-existing claims* will not abate upon the death of

the plaintiff or defendant. *See §§ 537.010, 537.020, 537.021.*

**7.** They could also be met if the state is the taker of last resort. *See* n. 8.

means to achieve them must be crafted through the legislative process.

There are sound policy reasons for deferring to the General Assembly under these circumstances. The decision to recognize a new cause of action "carries with it a vast array of ancillary issues as to how these ... claims will proceed." *Powell,* 834 S.W.2d at 189. In this case, the question of damages comes immediately to mind. The statute lists several types of damages, both relational and survivorship. Those items related to the loss of the decedent's services and companionship are obviously inapplicable to the estate. Other categories are not so easily disposed of: Should the estate be allowed to recoup its loss of future earnings where an individual could recover for the loss of the decedent's support? Is the estate conceptually justified in claiming damages for the decedent's injuries and suffering prior to death? Alternatively, is it right to let some tortfeasors escape most or all liability merely because their victims have no living kin?

These unresolved issues underscore the wisdom of declining to expand the range of potential wrongful death beneficiaries to include the estate of the decedent.[8] We reiterate our recent comment in *Powell:*

> Embarking into a new area of litigation such as this lends itself better to prospective legislative enactment than to the case-by-case, issue-by-issue approach that this Court would be required to undertake if these causes of action were to be recognized by common law decision.

834 S.W.2d at 190.

Plaintiff also cites the statement in *O'Grady* "that a cause of action for wrong-

ful death will lie whenever the person injured would have been entitled to recover from the defendant *but for* the fact that the injury resulted in death." *Id.* 654 S.W.2d at 910–1. This rather broad statement must be read within the context in which it was made. The issue in *O'Grady* was whether or not a viable fetus is among the class of persons for whose death damages are recoverable.[9] Since the conclusion cited above was reached assuming the existence of statutory beneficiaries, it provides no real guidance in the case at bar.

In addition, plaintiff asserts that under the provisions of our probate code, the wrongful death claim vested in decedent's personal representative at her death. But a wrongful death claim does not belong to the deceased. *O'Grady,* 654 S.W.2d at 910. The right of action is neither a transmitted right nor a survival right, but is created and vests in the survivors at the moment of death. *Id.; American Family Mutual Ins. Co. v. Ward,* 774 S.W.2d 135, 136–7 (Mo. banc 1989). The probate code merely authorizes the personal representative to commence and prosecute those "actions which may be maintained". *§ 473.270.* The source of the personal representative's authority to maintain a particular action must be found in another substantive provision of law. The wrongful death statute is not such a source.

## IV.

Plaintiff's second point contends that, in the absence of any surviving relatives, decedent's estate has a common law

8. Missouri's descent and distribution statute lists the state as the taker of property by escheat if no other person is entitled to inherit. *§ 474.010.4.* This raises the question of whether the State of Missouri is a beneficiary under the wrongful death statute. *See Jacobs v. Leggett,* 295 S.W.2d 825, 830 (Mo. banc 1956). No Missouri wrongful death case has directly considered the impact of this issue. Other states distinguish between taking by descent and by escheat, and imply the contrary. *See, e.g., People ex rel. Kunstman v. Shinsaku Nagano,* 389 Ill. 231, 59 N.E.2d 96, 102 (1945); *In re Rapoport's Estate,* 317 Mich. 291, 26 N.W.2d 777, 781 (1947); *In re Menschefrend's Estate,* 128

N.Y.S.2d 738, 743 (App.Div.1954); *Boulger v. Evans,* 54 Ohio St.2d 371, 377 N.E.2d 753, 755–6 (1978). Because the state's potential claim was neither pled, proved, nor argued below, and because plaintiff's application was not filed on behalf of any person entitled to share in the proceeds of this action, we do not address the issue in this case. *See Pittock,* 530 S.W.2d at 221.

9. That question was answered affirmatively. 654 S.W.2d at 910. The Court later declined to extend the cause of action to cover the death of a nonviable fetus. *Rambo v. Lawson,* 799 S.W.2d 62, 63 (Mo. banc 1990).

right to recover damages for her death that is not nullified by the statute. This contention has been consistently rejected in our past decisions. *See, e.g., Powell*, 834 S.W.2d at 186; *Rambo*, 799 S.W.2d at 65 (Robertson, J., concurring in result); *Ward*, 774 S.W.2d at 136; *O'Grady*, 654 S.W.2d at 907. Missouri does not recognize a common law cause of action for wrongful death.

 Plaintiff cites *Moragne v. State Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1969), to support his proposition. What that decision states is that "the work of the *legislatures* has made allowance of recovery for wrongful death the general rule of American law, and its denial the exception." *Id.* at 393, 90 S.Ct. at 1783 (emphasis added). Rather than declaring the wrongful death action to be a part of the common law, as plaintiff contends, *Moragne* underscores its statutory nature. Justice Harlan describes the role of the courts in the development of a statutory cause of action thus:

> It has always been the duty of the common-law court to perceive the impact of major legislative innovations and to interweave the new legislative policies with the inherited body of common-law principles—many of them deriving from earlier legislative exertions.

*Id.* at 392, 90 S.Ct. at 1783. This Court is not inclined to discard the statutory framework in order to fashion a common law cause of action out of whole cloth.

Plaintiff also asserts that a common law cause of action is authorized under the Second Restatement of Torts. But the Restatement describes the purpose of this right as follows:

> When recognized, this common law right has been utilized to fill in unintended gaps in present statutes or to allow ameliorating common law principles to apply.

*Restatement (Second) of Torts*, § 925(k). As our previous discussion makes clear, the failure to provide a right of action to the estate is not an "unintended gap" in our statute, but rather has been the policy of this state from the beginning. Either the gap was intended or, *if* the state is ulti-mately found to be the taker of last resort, no gap exists.

Finally, plaintiff has not presented sufficient reasons for invoking this Court's equitable powers and "allow[ing] ameliorating common law principles to apply." Whatever the potential shortcomings in our present statute, plaintiff has not shown that any interested person has thereby been unjustly deprived of a remedy. That crucial factor distinguishes this case from others such as *Holt v. Burlington Northern R.R.*, in which the equitably adopted son of the deceased was permitted to maintain an action for her death, even though there was no decree of adoption at the time of the accident. 685 S.W.2d 851, 857 (Mo. App.1984).

Finding no error, we affirm the circuit court's judgment of dismissal.

All concur.