**OHM PROPERTIES, LLC, Plaintiff/Respondent,**

v.

**CENTREC CARE, INC., Medical Resolutions, Inc., and M.A. Kabir Psychiatry, Inc., Defendant/Appellants.**

No. ED 92635.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 1, 2009.

Application for Transfer to Supreme Court Denied Jan. 21, 2010.

Application for Transfer Denied March 2, 2010.

James A. Beckemeier, Beckemeier Law Firm, LC and Michael J. Payne, Frankel, Rubin, Bond, Dubin, Siegel & Klein, P.C., St. Louis, MO, for Appellants.

Jay L. Kanzler, Jr., Christopher L. Kanzler and Brian J. Massimino, St. Louis, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

### Introduction

Centrec Care, Inc. (Centrec Care) and Medical Resolutions, Inc. (MRI) appeal from the trial court's judgment finding that the original lease for office space between Centrec Care and MRI as tenants and OHM Properties, LLC as landlord terminated on December 31, 2008, and that the option to renew the original lease was invalid and unenforceable because both tenants were required to, but could not, exercise the option to renew the lease. We reverse.[1]

---

1. Respondent's Motion for Attorneys' Fees on Appeal, which was filed on November 10, 2009, and was taken with the case, is denied.

*Factual and Procedural Background*

OHM Properties, LLC (Respondent) owns the property located at 1030 Woodcrest Terrace Drive in St. Louis County. Respondent purchased the property from Delmar Properties, LLC, on or about January 23, 2008, at which point Respondent became the owner and landlord of the property. Respondent intended to convert the property into a hotel.

A sixty-four month lease was entered into on May 20, 2002, between Respondent's predecessor as landlord and tenants MRI and Centrec Care. The lease included an option to renew for another five-year period (Option to Renew). MRI was administratively dissolved as a corporation on May 22, 2002, two days after the lease was signed. On January 10, 2008, Centrec Care and MRI sent notice to Respondent that they wished to exercise their Option to Renew. MRI remained administratively dissolved on January 10, 2008. On October 31, 2008, Respondents filed a Petition for Declaratory Judgment in the Circuit Court of St. Louis County seeking a declaration that the lease terminated on December 31, 2008, and that the Option to Renew was not validly exercised. MRI filed the necessary documents with the Secretary of State, and on November 14, 2008, MRI was reinstated as a Missouri corporation.

Following a bench trial, the trial court found that both MRI and Centrec Care were tenants under the lease. Further, the trial court found that because MRI was in administrative dissolution and never conducted any business prior to the time it executed the Option to Renew the lease, MRI was not a corporation in good standing and therefore did not have the legal capacity to exercise the Option to Renew. The trial court held that because both tenants were required to exercise the Option to Renew in order for the option to have legal effect, the exercise of the Option to Renew was invalid. The trial court granted judgment for Respondent. In holding that MRI lacked the legal capacity to exercise the Option to Renew, the trial court found that although MRI was reinstated as a Missouri corporation on November 14, 2008, the reinstatement in this instance only operated prospectively. The trial court specifically found that retrospective reinstatement of MRI's corporate status, in this case, would be manifestly unjust.

On March 2, 2009, Centrec Care and MRI filed their notice of appeal in this Court. Respondent filed a request for attorneys' fees on November 10, 2009, which has been taken with the following appeal.

*Points on Appeal*

Centrec Care and MRI (collectively, Appellants) raise two points on appeal. First, Appellants argue that the trial court misapplied the law and its judgment was against the weight of the evidence because Section 351.488.3[2] validates actions of a dissolved corporation, while dissolved, if the corporation is subsequently reinstated.

Second, Appellants argue that the trial court misapplied the law and its judgment was against the weight of the evidence because the lease did not require both tenants to execute the Option to Renew for the option to be validly exercised. Because we reverse the trial court's decision based on Appellants' first point, we need not consider the second point on appeal.

*Standard of Review*

A trial court's bench-tried case will be reversed only if there is no substantial evidence to support it, if the judgment

**2.** All statutory references are to RSMo 2000, unless otherwise indicated.

is against the weight of the evidence, or if the judgment erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Construction of a statute is a question of law and does not involve judicial discretion. *Delta Air Lines, Inc. v. Dir. of Revenue*, 908 S.W.2d 353, 355 (Mo. banc 1995). As such, no deference is given to the trial court's determination of the law. *St. Louis County v. B.A.P., Inc.*, 25 S.W.3d 629, 631 (Mo. App. E.D.2000).

### Discussion

When interpreting a statute, our primary role is to ascertain the legislature's intent from the language used in the statute and, whenever possible, to give effect to that intent. *Sullivan v. Carlisle*, 851 S.W.2d 510, 512 (Mo. banc 1993). A statute must not be interpreted narrowly if such an interpretation would defeat the purpose of the statute. *B.A.P., Inc.*, 25 S.W.3d at 631. Moreover, it is presumed every word, clause, sentence and provision of a statute have effect; conversely, it will be presumed that idle verbiage or superfluous language was not inserted into a statute. *Id.*

The trial court found that the reinstatement of MRI on November 14, 2008, "should, in this instance, be applied prospectively because nothing had changed for MRI from its years of inactivity, and it had no prospect of commencing business when the corporation was reinstated." Further, the trial court found that to allow the reinstatement to validate the renewal option by MRI would be "manifestly unjust in view of the circumstances." The trial court erred by inserting its own criteria into a direct and simple law. Section 351.488.3 states in its entirety:

When the reinstatement is effective, it *relates back to and takes effect as of the effective date of the administrative dis-*

*solution and the corporation resumes* carrying on its business *as if the administrative dissolution had never occurred.* (emphasis added).

A plain reading of Section 351.488.3 makes clear that reinstatement relates back to the date of administrative dissolution. The statute has both retroactive and prospective application. In implementing the above statute, the reinstatement takes effect as of the effective date of the administrative dissolution and reinstatement continues from November 14, 2008, forward. Thus, legally, MRI never ceased to exist, and it had the legal ability to enter into the extension agreement of the lease.

The original version of Section 351.488.3, then Section 351.535, RSMo 1949, was interpreted by the Missouri Supreme Court in 1951. *Clark Estate Co. v. Gentry*, 362 Mo. 80, 240 S.W.2d 124 (1951). The Court looked to the following provision that guided corporate forfeitures:

When the forfeiture of the certificate, or license, of any corporation has been declared, the officers and directors or the manager, or managers, of the affairs of said corporation, as the time such forfeiture is declared, by whatever name they may be known in law, shall be trustees of such corporation with full power to settle its affairs and distribute its assets among its stockholders, after paying the debts due and owing by such corporation, and as such trustees to sue and recover debts and property due such corporation, and they shall be jointly and severally responsible to the creditors and stockholders of such corporations to the extent of its property and assets that may properly come into their hands.

Section 351.525, RSMo 1949; *Clark*, 240 S.W.2d at 126. Additionally, Section 351.530 provided a penalty for exercising

corporate powers after forfeiture, and Section 351.535 provided:

> No corporation shall maintain an action in any court of this state for the collection of bills or accounts payable or for the enforcement of a contract, made while such corporation is in suspension, or after the forfeiture of its certificate, or license, under the provisions of this article, unless it shall have first been reinstated or the forfeiture entered against it rescinded as in this article provided.

Section 351.535, RSMo 1949; *Clark*, 240 S.W.2d at 127. The Missouri Supreme Court held the reinstatement statute to be prospective only. *Id.* at 127–29. After a corporation's charter had been forfeited, a "rescission" of that forfeiture was only to give the corporation power to act thereafter, but this would not relate back to give validity to any act that occurred after forfeiture and prior to rescission. *Id.*

However, in 1975, the Missouri Legislature amended the statute in order to expressly give the reinstatement statute retroactive effect. The Missouri Court of Appeals then distinguished *Clark* based on the amended statute. *A.R.D.C, Inc. v. State Farm Fire & Cas. Co.*, 619 S.W.2d 843, 846 (Mo.App.1981). The amended statute, Section 351.540.2, RSMo 1975, provided:

> Upon the issuance of a certificate rescinding the forfeiture of the corporate rights of a corporation, the restoration of corporate rights and privileges shall have effect from the date of the forfeiture, and all acts of the corporation, in the period between the date of forfeiture and the date of the rescission [ ] of the forfeiture shall be thereby confirmed and held as the acts of the original corporation; except that, any judgment obtained against any person in his capacity as a trustee under section

351.525 shall not be vacated by reason of any rescission [ ] under this section, but shall continue in full force and effect notwithstanding the rescission [ ]. No corporation shall prosecute any action enumerated in section 351.535[ ] following a rescission [ ] under this section if the action was filed after the forfeiture of the corporation's corporate rights but prior to the rescission [ ] of that forfeiture.

*Id.* at 844–45.

The appellate court presumed that the legislature was aware of the state appellate courts' existing interpretation of the statutes and concluded that the legislature intended to make a change in the law applied in *Clark*, such that the restoration of corporate rights and privileges has retroactive effect and is effective from the date of forfeiture of the corporation's charter. *A.R.D.C*, 619 S.W.2d at 845–46. The *A.R.D.C.* court stated that the amendment's effect was "to treat the forfeiture as if it had never occurred." *Id.* at 846. It provides for the restoration of all corporate rights and privileges to become effective from the very date of the forfeiture; all acts taken between forfeiture and rescission of that forfeiture are confirmed and held to be valid. *Id.* The court specifically noted that even though it is unlawful for a person to exercise corporate powers after a charter has been forfeited, once the forfeiture has been rescinded, the legislature "has forgiven the illegal use of corporate powers." *Id.*

Following the ruling in *A.R.D.C.*, the Missouri Legislature again amended the law to its current form by repealing the *A.R.D.C.*'s applicable statute, Section 351.540, and enacting Section 351.488, which became effective in 1991. As stated *supra*, Section 351.540.3 now reads: "When the reinstatement [of an administratively dissolved corporation] is effective,

it relates back to and takes effect as of the effective date of the administrative dissolution *and the corporation resumes carrying on its business as if the administrative dissolution had never occurred."* (emphasis added).

■ Since its most recent amendment, the retroactive nature of Section 351.488.3 has not been directly ruled on by an appellate court. Although the 1991 amendment changed the language of the provision relating to the reinstatement of corporations that had been administratively dissolved, we do not interpret the amendment to alter the effect or meaning of Section 351.488.3. We now hold that the plain meaning of Section 351.488.3 dictates that the reinstatement of an administratively dissolved corporation in Missouri is retroactive to the date of the administrative dissolution, consistent with the ruling in *A.R.D.C.* In so concluding, we compare the current statutory language, which states that the corporation "resumes" carrying on its business as if the administrative dissolution had never occurred, with the language from the 1975 statute, interpreted in *A.R.D.C.*, which states that all of the acts that had occurred between the date of forfeiture and the date of rescission of the forfeiture "shall be thereby confirmed and held as the acts of the original corporation." Although the 1991 amendment varies semantically from the language found in the 1975 statute, when we consider the plain and clear meaning of the words used in Section 351.488.3, and give effect to every word, we find that the current statute has both retroactive and prospective application to reinstated corporations. Without such a finding, the conjunctive clause stating that the corporation "resumes carrying on its business as if the administrative dissolution had never occurred," found in Section 351.488.3, would be superfluous and meaningless. We presume that superfluous language was not inserted into this statute. *B.A.P., Inc.,* 25 S.W.3d at 631.

Here, MRI's November 12, 2008 reinstatement validated its January 10, 2008 act of signing the Option to Renew even though MRI executed the Option to Renew during the time MRI was administratively dissolved. Applying Section 351.488.3 retroactively, as we must, MRI was reinstated back to the date of its administrative dissolution on May 22, 2002, two days after the lease was signed. MRI's actions occurring between the dissolution or "forfeiture" and the date of "rescission" or reinstatement relate back to the date of dissolution and are held as valid acts of the original MRI corporation. Thus, MRI and Centrec Care both timely executed their Option to Renew the lease.

■ With respect to the trial court's finding that retrospective reinstatement of MRI's corporate status would be manifestly unjust, we recognize that this finding was derived from the United States Bankruptcy Court's decision, *In re Byrd,* 228 B.R. 435 (W.D.Mo.1999). In *Byrd,* the bankruptcy court stated that even when retroactive application of the reinstatement of corporate status is permitted, retroactive application has been denied "if it would encourage fraud or permit a manifest injustice." *Id.* at 438. In *Byrd,* the court noted that the defendant corporation had been administratively dissolved for its failure to file an annual report, but reinstated itself "not only to comply with state law but also to defend itself from claims brought by the Debtor." *Id.* at 436–37. While we acknowledge the Bankruptcy Court's statement that courts may deny retroactive application of reinstatement if the retroactive application encourages fraud or permits manifest injustice, we find here that Section 351.488.3 includes no subjective element. Whether or not the

trial court believes the retroactive reinstatement of MRI's corporate status will lead to a result that is manifestly unjust is irrelevant where the legislature has made its intent clear in the statute.[3] Section 351.488.3 simply provides no exception to its express declaration that, upon reinstatement, "the corporation resumes carrying on its business as if the administrative dissolution had never occurred."

Based on the foregoing, we find the trial court erred in holding that MRI's reinstatement applied prospectively only, and that MRI lacked the capacity to execute the Option to Renew. Appellants' first point is granted. We reverse and remand with directions that the trial court enter its ruling consistent with this opinion. Respondent's request for attorneys' fees is hereby denied.

## Conclusion

The judgment of the trial court is reversed and remanded to the trial court with instructions to enter an order consistent with this opinion.

GEORGE W. DRAPER III and ROY L. RICHTER, JJ., Concur.

**3.** Furthermore, we do not agree with the trial court's assessment that retroactive reinstatement of MRI's corporate status would be manifestly unjust. Despite MRI's temporary dissolution, Centrec Care continued to comply with all of its obligations under the lease agreement. The parties to the lease entered into an arms length transaction that provided Appellants with an Option to Renew with the original lease. Respondent purchased the property in question with, at a minimum, constructive knowledge of the Option to Renew, and its attendant benefits and risks. The fact that the renewal of the lease may negatively impact Respondent's plans to convert the leased property into a potentially lucrative hotel does not render retroactive reinstatement of MRI's corporate status manifestly unjust.